JERRY E. SMITH, Circuit Judge:
Wendell Ardoin appeals his conviction of possessing, manufacturing, failing to register, and failing to pay taxes on illegal machine-guns. Ardoin argues that the statute under which he was charged, requiring registration and payment of taxes, was implicitly repealed by a statute declaring maehineguns manufactured after 1986 (“posL-1986 maehineguns”) illegal. He also claims that the statute prohibiting “making” of firearms is unconstitutionally vague. Furthermore, he challenges the district court’s refusal to grant a new trial based upon new evidence and his sentence under the Sentencing Guidelines (the “Guidelines”). We conclude that the statute under which Ardoin was convicted was not implicitly repealed and is not unconstitutionally vague, and we affirm his conviction and sentence.
I.
A.
Ardoin is an avid gun collector and dealer. He is a member of the local sheriff’s and police department reserves. In 1989, he became a gun dealer and obtained a Class I gun license by filing the appropriate forms with the Bureau of Alcohol, Tobacco, and Firearms (“ATF”). He then filed a Form 11 with ATF to obtain his Class III license to buy and sell maehineguns.
In 1989, Ardoin also became a Colt distributor for law enforcement agencies. As a distributor, he was able to sell to law enforcement agencies any class of weapons, including maehineguns, as long as he maintained his Class III license.[1] Ardoin also purchased Colt semi-automatic weapons from the Welsh, Louisiana, Police Department in exchange for supplying the department with free equipment and/or weapons. Furthermore, he obtained four automatic weapons from the Baton Rouge Police Department on behalf of the Welsh Police Department’s chief.
The semi-automatic weapons purchased through the Welsh Police Department did not require the filing of forms with ATF or the payment of transfer tax, as they were not automatic weapons. The Baton Rouge weapons, however, were automatic, and Ardoin filed a Form 10 with ATF. Form 10 is used to register weapons to a particular law enforcement agency and to obtain a tax-exempt status on the transfer. After filing the forms, Ardoin obtained the maehineguns through the Welsh Police Department.
Also in 1989, Ardoin’s partner, Michael Hebert, converted some semi-automatic *179 weapons to automatic guns for the use of local police and sheriff’s departments. Before converting the weapons, Ardoin filed a Form 10 with ATF for each weapon.
B.
On November 6,1991, Ardoin was indicted on fourteen counts of conspiracy to violate the National Firearms Act (“NFA”), 26 U.S.C. §§ 5861(d), (e), and (l ) and 7201, making of machineguns without having filed a written application or paying the making tax (in violation of §§ 5861(f) and 5871), evading the payment of taxes (in violation of § 7201), engaging in the business as a dealer without having paid the special occupational tax (in violation of §§ 5861(a) and 5871), making false entries on applications for tax-exempt transfers and registrations (in violation of §§ 5861(¿) and 5811), and possession of unregistered firearms (in violation of §§ 5861(d) and 5871. At trial, the government contended that the various weapons were in the physical possession of Ardoin’s partnership, Bayou State Armory, not the local police departments. Therefore, Ardoin should have filed a Form 1 instead of a Form 10 and should have paid a making tax. Ar-doin responded that the Welsh Police Department had authorized him to receive the weapons and that he was a commissioned officer acting on the department’s behalf. Furthermore, ATF had sent out a circular stating that it would no longer accept Form l’s and that the guns were tax-exempt, since they were made for a government agency. Ardoin was unable to obtain a copy of the ATF circular, and ATF agent Paul Rash testified that no such circular existed.
A jury found Ardoin guilty on all twelve counts.[2] He moved for a new trial after obtaining a copy of the ATF circular. The motion for new trial was denied. The sentencing court adopted the factual findings contained in the presentence investigation report (“PSR”), which recommended a range of forty-six to fifty-seven months’ imprisonment. Ardoin was sentenced to forty-six months on each of the twelve counts, to run concurrently.
II.
This case presents a novel constitutional issue in this circuit: whether § 102(9) of the Firearms Owners’ Protection Act of 1986 (“FOPA”), 18 U.S.C. § 922(o), which amended the Gun Control Act of 1968 by making possession of machineguns illegal, implicitly repealed portions of the NFA. We review such legal questions de novo. United States v. Guajardo, 950 F.2d 203, 206 (5th Cir.1991), cert. denied, — U.S. -, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992).
Ardoin argues that 26 U.S.C. §§ 5821, 5861(d), (e), (f), (l), 5871, and 5845 are unconstitutional because they were originally based upon Congress’s taxing power.[3] He reasons that since individuals may not possess ma-chineguns manufactured after May 19, 1986, and ATF refuses to accept applications to register or to pay the tax on such weapons, the constitutional authority for provisions of the NFA dealing with the registration and taxing of post-1986 machineguns is gone. Consequently, criminal liability imposed under the NFA for failure to comply with these provisions has also been repealed.
Ardoin cites United States v. Rock Island Armory, 773 F.Supp. 117 (C.D.Ill.1991), and United States v. Dalton, 960 F.2d 121 (10th Cir.1992), as authority for this position. In Rock Island Armory, the court held portions of the NFA to have been implicitly repealed by the FOPA
Two bases exist for declaring the portions of the NFA pertaining to post-1986 machine-guns to have been implicitly repealed. First, the fact that ATF no longer collects taxes or accepts registration forms for such weapons makes compliance with § 5861(d) impossible. *180 Second, and more importantly in the Rock Island Armory court’s view, the refusal to tax these weapons undercuts the constitutional basis of registration, since the NFA was originally upheld under Congress’s power to tax. The Tenth Circuit adopts this view in Dalton.
The government cites United States v. Jones, 976 F.2d 176 (4th Cir.1992), cert. denied, — U.S. -, 113 S.Ct. 2361, 124 L.Ed.2d 260 (1993), to rebut these two arguments. The court held in Jones that in the absence of an affirmative showing of an intention to repeal a statute, the only permissible justification for repeal by implication is when the earlier and later statutes are irreconcilable. Id. at 183 (quoting Morton v. Mancari, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482-83, 41 L.Ed.2d 290 (1974)).
But 18 U.S.C. § 922(o), prohibiting post-1986 maehineguns, can be reconciled with § 5861. Citing Minor v. United States, 396 U.S. 87, 96-97, 90 S.Ct. 284, 288-89, 24 L.Ed.2d 283 (1969), for the proposition that Congress can tax illegal conduct such as the sale of narcotics, the court concluded that the prohibition of post-1986 maehineguns does not mean that Congress cannot tax them. Although it is illegal to possess or manufacture these weapons, one illegally doing so would be required to register them with ATF and pay taxes on them. And if ATF refuses to allow registration or the payment of taxes, one can comply with § 5861(d) by not violating § 922(o), i.e., by not possessing or manufacturing any post-1986 maehineguns. Jones, 976 F.2d at 183 (citing Minor).[4], Thus, the Jones court rejected the Tenth Circuit’s view that compliance with § 5861 was impossible and therefore that the statute was implicitly repealed.
Jones dealt with the taxing authority argument in two ways. First, ATF has the authority to tax now-illegal maehineguns. Although it chooses not to allow tax payments or registration, it still has the authority to do so. Thus, the basis for ATF’s authority to regulate — the taxing power — still exists; it is merely not exercised. Second, the court noted that although the NFA was originally upheld under Congress’s taxing power, no one could seriously contend that the regulation of maehineguns could not also be upheld under Congress’s power to regulate interstate commerce.[5]
We adopt the analysis of the Fourth Circuit. The NFA can be upheld on the preserved, but unused, power to tax or on the power to regulate interstate commerce. Since the provisions of the NFA can be reconciled with the FOPA, the doctrine of implicit repeal must be rejected.
III.
Ardoin next challenges the constitutionality of his conviction for “making” a firearm, as the Supreme Court has recently held that the term “making” is ambiguous. We review this legal issue de novo. Guajardo, 950 F.2d at 206.
In United States v. Thompson/Center Arms Co., — U.S. -, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992), the Court recently considered the meaning of the term “make” as used in the NFA. In Thompson/Center, the defendant manufactured a single shot pistol. Included with the gun, however, was a conversion kit that allowed the purchaser to *181 convert the gun into a short-barreled rifle, a gun regulated by ATF. The defendant paid the “maker” tax but sued ATF for a refund. The Court held that the term “maker” in 26 U.S.C. §§ 5821 and 5845 was ambiguous as applied to unassembled parts, as there was only the possibility of their being assembled into a regulated firearm.
The holding of Thompson/Center, however, is applicable only to unassembled parts. The statute is not ambiguous with respect to fully assembled machineguns. Ardoin argues that in a criminal proceeding the “rule of lenity” should apply. But the Thompson/Center Court would only hold the term “making” unconstitutionally vague as applied to unas-sembled machineguns. Ardoin manufactured fully assembled machineguns and should have known that such production was “making” under the statute. He cannot take advantage of an ambiguity with respect to some other fact situation.
Ardoin’s main complaint seems to be that he was manufacturing these weapons for law enforcement agencies, and therefore he should have been exempt from the taxing laws. But that issue was tried before a jury. And although Ardoin makes reference to this argument, he never specifically appeals the jury’s factual finding or the verdict. We find, therefore, that the statute was not unconstitutionally ambiguous with respect to the making of fully assembled post-1986 ma-chineguns.
IV.
Ardoin argues that the ATF circular, which informed gun dealers that ATF would no longer accept Form l’s, represents new evidence requiring a new trial. To obtain a new trial based upon new evidence, a defendant must show that (1) the evidence was newly discovered and unknown to the defendant at the time of the trial; (2) failure to detect the evidence was not a result of lack of due diligence by the defendant; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence will probably produce an acquittal. United States v. Peña, 949 F.2d 751 (5th Cir.1991). If any one factor is not satisfied, .the motion for new trial should be denied. United States v. Lopez-Escobar, 920 F.2d 1241 (5th Cir.1991). We review the denial of such a motion for abuse of discretion. United States v. Adi 759 F.2d 404 (5th Cir.1985).
The ATF circular fails to meet several components of the test. First, Ardoin knew about its existence but could not produce it at trial. He filed no subpoena for the document, indicating a certain lack of diligence. The district court therefore determined that the evidence was not “newly discovered” within the meaning of Fed. R.CRIM.P. 33. Second, if we hold that the impossibility of complying with a statute does not render it unconstitutional, the circular was not particularly useful to Ardoin and would not “probably” produce an acquittal. Ardoin still could be convicted of failing to comply with the registration and taxation requirements, as he could have complied by not manufacturing the illegal weapons. Procedurally, a motion for new trial is disfavored; the discovery of the circular does not warrant a new trial.
V.
Ardoin challenges his sentence imposed under the Guidelines because he was not granted a downward departure for his community service, employment record, lack of criminal record, and potential for victimization. We review the findings of fact under the “clearly erroneous” standard, but legal application of the Guidelines is reviewed de novo. United States v. Barbontin, 907 F.2d 1494 (5th Cir.1990).
Any departure from the Guidelines must be supported by adequate reasons that justify the departure “in terms of the policies underlying the sentencing guidelines” and must be reasonable. United States v. Buenrostro, 868 F.2d 135 (5th Cir.1989), cert. denied, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). The Guidelines specifically reject first-time offender status as a ground for downward departure. First-time offenders are assigned criminal history category I, which adequately reflects the level of recidivism. U.S.S.G. § 4A1.3. Sections 5H1.5 and 5H1.6 also specifically reject community service and employment record as *182 grounds for departure. Moreover, there is no authority in this circuit for departing based upon the potential for victimization. Ardoin argues that these factors are not ordinarily considered, but in his case they ought to be.
We conclude that the district court considered all relevant factors and sentenced Ar-doin to the lowest sentence within the range. The failure to depart downward was not in error.
AFFIRMED.

. The government contends that Ardoin allowed his Class III license to lapse in June 1989. His partnership reapplied for a Class III license in August 1989; the application was approved on October 27, 1989.

. The 14-count indictment was amended prior to trial by dismissing two of the counts.

. The one case in this circuit to consider the basis for the NFA is United States v. Parker, 960 F.2d 498 (5th Cir.1992), in which we noted that § 5861(d) " 'is part of the web of regulation aiding enforcement of the transfer tax provision in [26 U.S.C.] section 5811’ and 'the constitutional bedrock for the statute' is 'the power to tax’ rather than 'the commerce power.’ " Id. (quoting United States v. Ross, 458 F.2d 1144, 1145 & n. 3 (5th Cir.), cert. denied, 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972)).

. As we have recently stated, "it is true that a transferee may be prosecuted for possessing an unregistered firearm even though he himself cannot comply with the registration requirement." United States v. Ridlehuber, 11 F.3d 516, 526 (5th Cir.1993) (citing United States v. Bright, 471 F.2d 723, 726 (5th Cir.), cert. denied, 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973); United States v. Sedigh, 658 F.2d 1010, 1012 (5th Cir. Unit A Oct. 1981), cert. denied, 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 462 (1982)). But this result does not offend due process, because "[t]he requirement that a transferee must refuse to accept possession of an unregistered firearm is rationally designed to aid in the collection of taxes imposed by other provisions of the [NFA]." Id. at 527 (citation omitted). The same is true for someone possessing an illegal post-1986 ma-chinegun: Ardoin should have refused the transfer. The fact that ATF does not accept the registration of such weapons does not offend due process.

. Of course, as we have recently noted, Congress's power to regulate firearms under the Commerce Clause is not unlimited. See United States v. Lopez, 2 F.3d 1342 (5th Cir.1993), petition for cert. filed, 62 U.S.L.W. 3645 (U.S. Feb. 2, 1994) (No. 93-1260).