IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20983

_____

UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

v.

JOSE LUIS ARCE, Dr.,

                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

July 18, 1997

Before KING, DAVIS, and DeMOSS, Circuit Judges.

KING, Circuit Judge:

     Dr. Jose Luis Arce pleaded guilty to several counts
regarding possessing, transferring, and manufacturing illegal
weapons.  At sentencing, the district court departed upward five
levels based on three factors.  On appeal, Arce challenges the
constitutionality of some of the statutory provisions under which
he was convicted and subsequently sentenced.  He also claims that
the district court abused its discretion by upwardly departing.
We affirm Arce's convictions.  We conclude, however, that the
district court abused its discretion in its consideration of one
of the factors as a basis for departure, and therefore we vacate
his sentence and remand for resentencing.

## I. BACKGROUND

The facts of this case are undisputed. At the time of the offenses in the fall of 1995, Arce possessed one Sten machine gun, two Norinco machine guns, and two homemade silencers (one black and one white). One of Arce's friends introduced him to a man interested in purchasing a silencer and a fully automatic machine gun. The man interested in the purchases was an undercover agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF). Arce agreed to show the undercover agent how to construct a silencer and to videotape his demonstration so that others could learn his method. While being videotaped, Arce constructed the white silencer from PVC pipe, wire mesh, Coca-Cola can lids, pieces of rubber, and various other items purchased from a local home improvement store. Arce sold the agent the silencer for $100. Shortly thereafter, the ATF agent purchased the Sten machine gun from Arce for $600. During the sale negotiations, Arce told the ATF agent that he had personally, and illegally, constructed the Sten machine gun and converted the semi-automatic Norinco machine guns into fully automatic weapons. During this time, Arce knew that it was illegal to possess and manufacture machine guns and silencers without registering them with the ATF and paying the applicable taxes, and Arce neither registered nor paid the taxes for any of the devices.

A federal grand jury in the Southern District of Texas indicted Arce in April of 1996 with the following four counts: 1) possessing three unregistered machine guns and two silencers

in violation of 26 U.S.C. § 5861(d), 2) possessing three machine guns in violation of 18 U.S.C. § 922(o), 3) transferring a machine gun in violation of 18 U.S.C. § 922(o), and 4) manufacturing a silencer without first registering as a firearms manufacturer in violation of 26 U.S.C. § 5861(a).

After unsuccessfully attempting to strike the reference to machine guns from count one and to dismiss counts two and three, Arce pleaded guilty to all charges. The district court ordered the preparation of a presentence investigation report (PSR), which was filed in September of 1996. In October 1996, a sentencing hearing was held. After ruling on numerous objections to the PSR, the district court determined that Arce's offense level was 17 and his criminal history category was I, resulting in a sentencing range of 24 to 30 months according to the U.S. SENTENCING COMMISSION GUIDELINES MANUAL (hereinafter "USSG," "the Guidelines," or "the Sentencing Guidelines"). The court then departed upward five levels on the basis that the United States Sentencing Commission did not adequately consider several aggravating factors in promulgating the relevant guideline, USSG § 2K2.1. This resulted in a new sentencing range of 41 to 51 months, and the district court sentenced Arce to 51 months. Arce timely appealed.

On appeal, Arce asserts several arguments. Arce challenges his convictions and sentence relating to the three machine guns

on constitutional grounds.[1]  However, as Arce acknowledges, his positions are inconsistent with prior decisions of this court,[2] and we are bound by those decisions.  *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 185 (5th Cir. 1995) (stating that a panel of this court may not overrule the decision of a prior panel in the absence of an en banc reconsideration or a superseding decision of the Supreme Court).  Thus, we will not address the merits of these arguments.  Arce also asserts that the district court's upward departure at sentencing was an abuse of discretion.  Because we agree to some extent with Arce's argument, we vacate Arce's sentence and remand for resentencing.

## II.  LEGAL STANDARDS FOR UPWARD DEPARTURES

The Supreme Court recently discussed at length the legal standards for departures from the Sentencing Guidelines in *Koon v. United States*, 116 S. Ct. 2035 (1996).  Citing 18 U.S.C. § 3553(a), the Court began by making clear that "[a] district

---

[1]  Specifically, Arce argues that his convictions for possessing and transferring machine guns under 18 U.S.C. § 922(o) are unconstitutional "because Congress exceeded its powers under the Interstate Commerce Clause in enacting the statute."  Arce further argues that his conviction for possessing two unregistered machine guns under 26 U.S.C. § 5861(d) "is fundamentally unfair and violative of due process because the [ATF] would have refused to register Mr. Arce's three machine guns had he attempted to do so."  Based on these two arguments, Arce claims his sentence should be vacated because it was based in part on these machine guns.

[2]  *See United States v. Knutson*, 113 F.3d 27 (5th Cir. 1997) (holding that Congress did not exceed its powers under the Commerce Clause in enacting 18 U.S.C. § 922(o)); *United States v. Ardoin*, 19 F.3d 177, 180 n.4 (5th Cir. 1994) ("The fact that ATF does not accept the registration of such weapons does not offend due process.").

4

court must impose a sentence within the applicable Guideline range, if it finds the case to be a typical one." *Id.* at 2040. The Sentencing Commission did not consider every possible scenario of criminal activity and thus formulated the Guidelines around the normal or "heartland" case. *Id.* at 2044. When a court confronts a case that it determines falls outside this heartland, the court can consider departing from the Guidelines. The introduction to the Guidelines explains:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

USSG ch. 1, pt. A, intro. comment. 4(b). Congress has specifically authorized such departure power:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different than that described.

18 U.S.C. § 3553(b).

USSG § 5K2.0 is the Sentencing Commission's policy statement specifically governing the grounds for departure. The Commission notes that a case may involve factors that are not taken into consideration at all in the relevant Guideline, and the "[p]resence of any such factor may warrant departure from the guidelines." *Id.* In addition to factors not considered at all in the relevant Guideline, "the court may depart from the

5

guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.*, as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate." *Id.* In the commentary to § 5K2.0, the Commission notes its belief that cases which present these unusual circumstances and thus significantly differ from the heartland of cases "will be extremely rare." While the Commission specifically lists certain factors that should never be considered as a basis for departure,[3] it states that with the exception of those factors, it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." USSG ch. 1, pt. A, intro. comment. 4(b).

In *Koon*, the Supreme Court held that courts of appeals must review district court decisions to depart from the Guidelines for abuse of discretion. 116 S. Ct. at 2046-47. The Supreme Court explained in detail the wisdom of deferring to the district courts in this circumstance:

> A district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court. Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the

---

[3] The following are the prohibited factors: 1) drug or alcohol dependence, USSG § 5H1.4; 2) race, sex, national origin, creed, religion, and socio-economic status, § 5H1.10; 3) lack of guidance as a youth and similar indications of a disadvantaged upbringing, § 5H1.12; and 4) economic hardship, § 5K2.12.

6

> district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing. Whether a given factor is present to a degree not adequately considered by the Commission . . . [is a matter] determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do. In 1994, for example, 93.9% of Guidelines cases were not appealed.

*Id.* (citations omitted).

As will be discussed below, the government asserts that this case is outside the heartland because it involves factors that, while accounted for in the Guidelines, were not adequately considered by the Sentencing Commission in the circumstances of this case. Thus, under the principles set forth in the Sentencing Guidelines and in *Koon*, we must decide whether the district court abused its discretion in determining that this case is outside the heartland because the factors it identified are present in a kind or to a degree not adequately accounted for in the Guidelines, giving due deference to the district court's institutional advantage in determining whether a factor has been adequately considered.

## III.  DISCUSSION

The National Firearms Act (NFA), 26 U.S.C. §§ 5801-5872, regulates certain firearms, such as machine guns and silencers, and destructive devices, such as bombs. *Id.* § 5845. Among other things, the NFA imposes an obligation to register these firearms and devices with the ATF in a national registry and to pay a tax.

7

*Id.* § 5861. The NFA has been held constitutionally valid under the taxing power, *Sonzinsky v. United States*, 300 U.S. 506, 514 (1937), and is located within the Tax Code. Violations of the tax and registration requirements of § 5861 are sentenced under USSG § 2K2.1.

During the sentencing hearing, the district court determined that § 2K2.1 was inadequate to cover fully the circumstances of Arce's conduct and listed the following three factors upon which it based its five-level departure: 1) the possession of multiple NFA weapons, 2) Arce's deception and attempts to conceal his illegal conduct, and 3) Arce's manufacturing of firearms (as opposed to possession or transfer). The court relied upon Arce's participation in the videotape in its analysis of the manufacturing and concealment factors. The factor concerning multiple NFA weapons is specifically authorized as a ground for departure in Application Note 16 of USSG § 2K2.1, and Arce does not challenge this basis for departure. As for the other factors, the district court stated that it was operating "generally within [§] 5K2.0." The court gave one point for the multiple NFA weapons, two points for concealment, and two points for manufacturing.

On appeal, Arce argues that the district court abused its discretion by considering in any way during sentencing his participation in the videotape and by departing based on concealment and manufacturing, factors that Arce argues are adequately accounted for in § 2K2.1. Arce does not challenge the

reasonableness of the *extent* of the departure, but claims that the district court abused its discretion in considering these factors in the first place. We will consider each in turn.

### A. The Videotape

At the sentencing hearing when the court gave its reasons for the upward departure, the district court made several references to the videotape of Arce constructing the silencer in its analysis of the manufacturing and concealment issues. On appeal, Arce argues that the court could not consider the videotape in its upward departure analysis because the participation in the videotape "was not illegal other than to the extent that his making of the silencer, which was filmed, was proscribed by 26 U.S.C. § 5861." The videotape was confiscated before anyone else could view it to learn his technique; thus, Arce asserts, he cannot be liable for aiding and abetting because no one used the tape to conduct illegal activity. Because the tape did not produce illegal conduct and thus the act of making the tape was not illegal, Arce asserts that the district court cannot consider the participation in the videotape in its upward departure analysis.

We are not persuaded that the district court, in contemplating an upward departure, is limited to considering only acts that are criminal or illegal. In support of his proposition, Arce cites *United States v. Peterson*, 101 F.3d 375 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 1346 (1997). *Peterson* involves a defendant convicted for securities fraud. *Id.* at 377.

Calculating the base offense level in a securities fraud case involves the determination of the amount of monetary loss attributable to the defendant's conduct. *See* USSG § 2F1.1(b)(1). In arriving at the base offense level, a sentencing court considers not only the conduct in the charged offense but also "relevant conduct" to the offense of conviction. *See id.* § 1B1.3. The court in *Peterson* concluded that the district court erred in its calculation of loss because it included losses from conduct that was not criminal. 101 F.3d at 385. The court explained:

> For conduct to be considered 'relevant conduct' for the purpose of establishing [one's] offense level[,] that conduct must be criminal. To hold otherwise would allow individuals to be punished by having their guideline range increased for activity which is not prohibited by law but merely morally distasteful or viewed as simply wrong by the sentencing court.

*Id.* (citations omitted).

*Peterson* is distinguishable from the present case because *Peterson* involves calculation of the *base offense level* while Arce complains of the district court's *upward departure*. A sentencing court is not limited to "relevant conduct" when considering an upward departure. The Sentencing Guidelines provide in § 1B1.4: "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, *without limitation*, *any* information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." (emphasis added); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed

10

on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). According to the background commentary, § 1B1.4 was written specifically to distinguish § 1B1.3, which only applies to calculating the base offense level. The Guidelines also specifically provide that conduct which does not constitute an element of the offense may be considered in determining a departure, even when that conduct cannot be considered in determining the base offense level under § 1B1.3. USSG § 1B1.2 comment. note 3; *see also United States v. Tropiano*, 50 F.3d 157, 164 (2d Cir. 1995) ("Section 5K2.0 allows an upward departure for misconduct not leading to conviction if the defendant committed acts related in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct." (internal quotations and alterations omitted)). Particularly enlightening is an amendment to the Guidelines effective November 1, 1990, which deleted the following paragraph from § 5K2.0, the general provision on departures: "Harms identified as a possible basis for departure from the guidelines should be taken into account only when they are relevant to the offense of conviction, within the limitations set forth in § 1B1.3." USSG app. C, amend. 358. This paragraph was deleted because the Sentencing Commission determined that it was "unclear and overly restrictive." *Id.* Clearly, the

Commission has rejected the position that grounds for departure can be based only on "relevant conduct" under § 1B1.3.

We conclude that a district court can consider conduct that is not itself criminal or "relevant conduct" under § 1B1.3 in determining whether an upward departure is warranted. Therefore, the district court's consideration of Arce's participation in the videotape was not per se an abuse of discretion, and we turn to a broader discussion of the factors upon which the district court based its upward departure.

## B. Concealment

The district court based part of its upward departure on what it perceived to be concealment or deceitful acts by Arce. The court stated that it was "very concerned about Dr. Arce's concealment in his multiple efforts to conceal either the illegality of what he's doing or the fact of his weapons and materials." The court pointed to three different acts of concealing. First, upon notification from the manufacturer to return some of his weapons because they were about to become illegal, Arce wrote the manufacturer and stated that he had sold the weapons via newspaper ad when in fact he had not sold them. Second, at the beginning of the videotape, Arce falsely stated that he was a licensed manufacturer under the NFA.[4] Third, the

---

[4] At the beginning of the tape, Arce states that manufacturing the silencer without being a registered manufacturer with the ATF is illegal and that he was a licensed manufacturer. Arce asserts that the false statement that he was a registered manufacturer is a collateral matter because he also indicated that any viewer should not make the silencer without being registered. Arce contends that this shows not concealment

12

court considered the video as "evidenc[ing] an intent to teach others how to do this, which to me, again, speaks to [the] issue of trying to enhance the ability of himself and others to create these items outside of the Government regulatory scheme. It's an intent to conceal or an intent to facilitate the other's concealing."

Arce asserts that the district court abused its discretion in upwardly departing based on this conduct for two reasons. First, Arce contends that lying in the letter and on the video and participating in the video were not, in themselves, criminal activities and thus cannot be used as the basis of an upward departure. As indicated in the immediately preceding section, we reject the contention that an upward departure must be based on criminal activity.

Second, Arce argues that the Sentencing Commission has already adequately taken concealment into account in promulgating § 2K2.1 and thus the district court abused its discretion in upwardly departing on this basis. According to Arce, because the NFA was enacted pursuant to the taxing power, the gravamen of an

---

but an intent to have others follow the law. We fail to see how the fact that he said only registered manufacturers could legally make the silencer changes the fact that he affirmatively misrepresented his status as a manufacturer. Even if the disclaimer is relevant to his intent to conceal, the district court rejected Arce's interpretation of the statements on the video. This rejection is, in essence, a factual credibility determination that we review for clear error. *See United States v. McCaskey*, 9 F.3d 368, 372 (5th Cir. 1993) (stating that a sentencing court's factual findings are reviewed for clear error). We conclude that the district court did not commit clear error in rejecting Arce's interpretation of the video statements.

NFA violation is the failure to register and pay a tax.  The base offense level for an NFA violation is 18, which is much higher than the base offense level for non-NFA weapons violations.[5] According to Arce, it is reasonable to assume this higher base offense level exists to promote the primary goal of the statute, which he asserts is to keep track of these dangerous weapons. Therefore, concealing the ownership of a firearm by not registering is inherent in an NFA violation.  Furthermore, the Sentencing Guidelines specify punishment for two situations involving concealment,[6] which implies that the Sentencing Commission chose not to aggravate other types of concealment and that only these two special circumstances of concealment merit an upward departure.

There are several problems with Arce's argument.  First, while it is true that the NFA was enacted pursuant to the taxing power, this court has recently held that the constitutionality of the NFA can be upheld based on either the taxing power or on the interstate commerce power. *United States v. Ardoin*, 19 F.3d 177, 180 (5th Cir. 1994).  Even if the NFA were based solely on the taxing power, that does not necessarily mean that its primary goal is tracking weapons as opposed to regulating them.  Indeed,

---

[5]  USSG § 2K2.1(a)(7) provides a base offense level of 12 for standard firearms violations while § 2K2.1(a)(5) provides a base offense level of 18 for NFA weapons violations.

[6]  USSG § 2K2.1(b)(4) provides for a 2 level increase if the firearm had an obliterated or altered serial number.  USSG § 2K2.1(b)(6) makes specific provision for recordkeeping offenses designed "to conceal a substantive offense involving firearms or ammunition."

14

the taxing power is often used as a means of regulation, and as long the legislation "on its face purports to be an exercise of the taxing power," "[i]nquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts." *Sonzinsky v. United States*, 300 U.S. 506, 513-14 (1937) (upholding the constitutionality of the NFA, despite the petitioner's assertion that it was passed "for the purpose of suppressing traffic in a certain noxious type of firearms" instead of to raise revenue). This seems particularly true in the NFA context because the NFA specifically prohibits the registration of illegal firearms and yet still provides for punishment if those firearms are not registered. 26 U.S.C. § 5812.[7] The fact that the NFA authorizes criminal sanctions for failing to register an illegal firearm, even when an individual in possession of an illegal firearm does not conceal that possession and attempts to register, suggests that the statute is concerned with more than concealment.

The second problem with Arce's argument is that § 2K2.1's inclusion of two specific provisions relating to concealment does not preclude the district court from considering other types of concealment. The Supreme Court rejected a similar argument in *Koon*. The lower court had departed downward based upon many factors, including the heightened risk that the defendants would

---

[7] This court has determined that this practice "does not offend due process," even though compliance with the registration requirement is impossible for the owner of an illegal firearm, because the owner always has the option of not owning the firearm. *Ardoin*, 19 F.3d at 180 & n.4.

15

suffer abuse in prison. The government argued that susceptibility to prison abuse should never be considered as a basis for departure because the degree of such susceptibility is entirely subjective. 116 S. Ct. at 2050. The Court rejected the government's plea to prohibit categorically such considerations, noting that "[t]he Commission set forth factors courts may not consider under any circumstances but made clear that with those exceptions, it 'does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.'" *Id.* (quoting USSG ch. 1, pt. A, intro. comment. 4(b)). For the courts to go beyond those prohibited categories listed by the Commission "would be to transgress the policymaking authority vested in the Commission." *Id.* Arce in effect is asking this court to prohibit sentencing courts from considering any type of concealment other than that type specifically listed, but we reject that position as inconsistent with the Guidelines and *Koon*.

The concealment factor is no different than any other factor that has already been considered to some degree in the offense: the district court has the discretion to determine if the factor exists to such a degree or kind as to make the case atypical and thus outside the heartland of cases covered by the Guidelines. The district court determined that this case was atypical because of the nature of Arce's concealing activities. He not only concealed in the usual sense of failing to register his firearms,

16

but he also took affirmative steps to conceal his illegal activity and his ownership of illegal and soon to be illegal firearms (*i.e.*, falsely denying possession of the firearms to the manufacturer and claiming he was a licensed manufacturer at the beginning of the videotape), and he made the videotape specifically to teach others to conceal by making silencers totally outside of the government regulatory scheme. The district court did not abuse its discretion by departing upwardly on this basis after determining that these factors make this case unusual and outside the heartland of cases governed by the Guidelines.

### C. Manufacturing

During sentencing, the district court stated that it was "extremely concerned about the fact that the guideline 2K2.1 does not in any way, shape, or form address the manufacture of weapons of silencers as we have here." The court further commented on the unusual nature of the manufacturing because of the videotape designed to teach others to manufacture:

> And then I'm concerned about the silencers. The fact
> that many of these weapons in question are silencers
> where -- homemade by Dr. Arce's own method, unlikely to
> be detected by metal detectors[8] and a methodology that

---

[8] Arce complains about the district court's reliance on any type of evidence regarding the ability of metal detectors to detect Arce's silencers. While neither the government nor the PSR mentioned evading metal detectors as a basis for departure, the district court brought the issue up *sua sponte*, asking the prosecutor if the silencer would show up in a metal detector. The prosecutor said he presumed it would show up because it was made with metal parts. Then, an ATF agent in the court room stated to the court that the silencer did not trigger the metal detector in the court building on the first try, but on

17

he intended by the video to spread to others so that they could copy his methodology. The concept of retaining and using under licensed system your own weaponry is one thing. The conduct by Dr. Arce is something qualitatively different that I think could not be conceived of in the guidelines because . . . it's such an unusual circumstance.

Arce claims that the district court abused its discretion in relying on manufacturing as a basis for upwardly departing because the Sentencing Commission considered manufacturing and decided not to make it an aggravating factor. Arce points to Appendix A of the Guidelines Manual, the Statutory Index, which lists the Guideline provision that corresponds to each particular

---

subsequent attempts the silencer did trigger the metal detector. The ATF agent stated that "to the best of [his] knowledge," the subsequent passes triggered the metal detector because the operator increased the sensitivity of the detector. When the court asked this question and elicited this information, Arce made no objection. Later in the sentencing hearing when the district court was stating its reasons for departure, it made the reference to the metal detector issue as set forth in the text. Again, Arce made no objection whatsoever to the district court's use of this information.

Arce claims on appeal that reliance on this information "was an abuse of discretion because there was inconclusive proof that Mr. Arce's silencers were intended to, or actually did, avoid detection by metal detectors in a manner that violated federal law." To the extent that Arce is arguing that this cannot be a basis for upward departure because the government did not prove he violated a federal statute regarding avoiding metal detectors, we have already rejected Arce's argument that the district court cannot consider noncriminal conduct in formulating an upward departure. To the extend Arce quarrels with the factual accuracy of the information relied upon by the district court, Arce failed to object to the district court, and thus we review for plain error only. *See United States v. Olano*, 113 S. Ct. 1771, 1776 (1993); *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994). Questions of fact that the sentencing court could have resolved upon proper objection at sentencing can never constitute plain error. *McCaskey*, 9 F.3d at 376. Thus, we reject Arce's argument that the district court erred in relying on the evidence regarding metal detectors.

18

statutory violation.  Appendix A indicates that Guideline § 2K2.1 applies to violations of 26 U.S.C. § 5861(a)-(*l*).  Section § 5861 contains two provisions specifically concerning manufacturing: 1) § 5861(a) proscribes engaging "in business as a manufacturer" of firearms without registering and having paid a special tax and 2) § 5861(f) makes it illegal "to make a firearm in violation of the provisions of this chapter."  Thus, according to Arce, since the Sentencing Commission specifically listed these two subsections in Appendix A as correlating to § 2K2.1, the Commission clearly did not ignore manufacturing but chose not to make it an aggravating factor.

We are partially persuaded by Arce's argument.  It is clear that acts of manufacturing are prohibited under § 5861, and convicted violators will be sentenced pursuant to § 2K2.1.  Indeed, § 2K2.1 governs Arce's sentence on count four for manufacturing a silencer without first registering as a firearms manufacturer.  Thus, the district court erred in basing a portion of its upward departure on the simple fact that "guideline 2K2.1 does not in any way, shape, or form address the manufacture of weapons" because § 2K2.1 governs those who are convicted of illegally manufacturing.  To hold otherwise would allow the government to prosecute only for possession and seek an upward departure for manufacturing and receive a higher sentencing range than with a prosecution for simple manufacturing.

This is not to say that manufacturing can never be a basis for an upward departure.  As the Sentencing Commission stated in

19

§ 5K2.0, "the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines . . . if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate."  In addition to its comments concerning manufacturing in general, the district court emphasized the "unusual circumstance" in this case that Arce videotaped his method of making silencers at home so that others could make these silencers and evade the registration and taxation requirements under § 5861.  The district court's judgment that this circumstance is so unusual as to fall outside of the heartland of cases in the Guidelines is to be given particular deference, *Koon*, 116 S. Ct. at 2046-47, and we conclude that the district court did not abuse its discretion in determining that the videotape took this case out of the heartland of manufacturing cases and upwardly departing on that basis.

Because the district court incorrectly considered a factor that the applicable Guideline already considers (simple manufacturing) and correctly considered a permissible factor (the unusual nature of the manufacturing because of the videotape), we must vacate the district court's sentence and remand for resentencing because we cannot conclude that the district court's sentence would have been the same without relying on the invalid factor.  *See Williams v. United States*, 503 U.S. 193, 203 (1992).

**IV. CONCLUSION**

For the foregoing reasons, Arce's convictions are AFFIRMED; we VACATE the district court's sentence and REMAND for resentencing consistent with this opinion.