

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-5-2004

# USA v. Grier

Precedential or Non-Precedential: Precedential

Docket No. 02-3427

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation
"USA v. Grier" (2004). *2004 Decisions.* Paper 1053.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1053

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 30, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3427

UNITED STATES OF AMERICA

v.

ABDUL GRIER,
                          *Appellant*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 00-cr-00356-2)
District Judge: Hon. Charles R. Weiner

Argued June 30, 2003

Before: SLOVITER, AMBRO, and BECKER, *Circuit Judges*

(Filed December 30, 2003)

Jeremy C. Gelb (Argued)
Philadelphia, PA 19106
Attorney for Appellant

Patrick L. Meehan
  United States Attorney
Laurie Magid
  Deputy United States Attorney
Robert A. Zauzmer
  Assistant United States Attorney
Nancy B. Winter (Argued)
  Assistant United States Attorney
Office of United States Attorney
Philadelphia, PA 19106

Attorneys for Appellee

---

## OPINION OF THE COURT

---

SLOVITER, *Circuit Judge*.

Appellant Abdul Grier appeals from the judgment of conviction entered following his guilty plea to charges under several provisions of the National Firearms Act ("NFA").[1] Grier argues that the resulting sentence should be vacated because (1) Congress' enactment of the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 922(*o*), implicitly repealed the NFA provisions to which he pled guilty; (2) the NFA offends due process because it is unfair to convict a person for failing to register a firearm when the Government will no longer permit such a registration; and (3) the NFA is unconstitutional as it no longer functions as a revenue-raising mechanism within Congress' taxation power.

We have previously reviewed cases that touched upon the NFA after the FOPA's enactment but we have not directly examined the precise issues Grier raises here. *See generally United States v. Rybar*, 103 F.3d 273, 275 n.2 (3d Cir. 1996) (declining to comment on the district court's finding that enforcement of 26 U.S.C. § 5861(e) was

---

1. The District Court granted Grier's motion under 28 U.S.C. § 2255 to vacate, set aside or correct a sentence based on Grier's allegation that his attorney failed to file a timely appeal notwithstanding Grier's request that he do so.

unconstitutional); *United States v. Palmieri*, 21 F.3d 1265, 1275 (3d Cir.), *vacated*, 513 U.S. 957 (1994). Those issues are now directly before us.

## I.

### FACTS AND PROCEDURAL HISTORY

In April 2000, agents from the Bureau of Alcohol, Tobacco, and Firearm ("ATF") learned that Grier and his two co-defendants, David Lewis and Cornelius Middleton, were manufacturing and selling homemade, fully-automatic machine guns. Thereafter, on April 11, 2000, Andre Brooks, an undercover ATF cooperator, purchased one machine gun from Lewis. At that time, Lewis suggested that he could sell Brooks additional guns in the near future. The following week, Brooks met Grier, Lewis, and Middleton in Grier's residence, where Brooks observed Grier and Middleton assembling several machine guns. The next day, Brooks purchased at Lewis' house three machine guns manufactured by Grier, for which Brooks paid $5,800.00 in prerecorded Government funds.

On April 28, 2000, Brooks purchased another machine gun from Lewis for $1,800.00, again paying in prerecorded Government funds. As Brooks was leaving, Grier appeared and offered to sell Brooks six additional machine guns that he was assembling. On May 23, 2000, Brooks went to Grier's residence to inspect the guns he had agreed to purchase. Brooks saw Grier, Middleton, and a young boy (later identified as juvenile "B") working on the machine guns, and arranged to meet with Grier on the following day to purchase the guns. On May 24, 2000, ATF agents intercepted and arrested Grier at the designated meeting place with three machine guns in his possession. ATF agents then executed search warrants for Grier's residence and found a full-scale firearms manufacturing room on the third floor. Agents recovered all tools and materials necessary to the production of automatic weapons, several machine guns and semi-automatic weapons in mid-production, and $500 of prerecorded Government funds that Brooks had used to purchase weapons.

A federal grand jury indicted Grier, Lewis, and Middleton with conspiracy to possess, transfer and make machine guns in violation of 26 U.S.C. §§ 5861(c), (e), and (f); three counts of making firearms in violation of 26 U.S.C. § 5861(f); two counts of possessing firearms in violation of 26 U.S.C. § 5861(c); three counts of transferring firearms in violation of 26 U.S.C. § 5861(e); and one count of possessing firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Grier, represented by court-appointed counsel, pled guilty to these charges. Some time thereafter, the District Court sentenced Grier to 144 months in prison. This sentence reflected both the enhancements for Grier's leadership roles in the various offenses and a reduction for his voluntary acceptance of responsibility.

On appeal, Grier does not challenge any of the above facts. Nor does he argue that his conduct did not fit within the language of the statutory provisions (all part of the NFA) for which he was indicted and to which he pled guilty. Instead, he challenges the constitutionality of the NFA.

## II.

### JURISDICTION AND STANDARD OF REVIEW

The District Court properly exercised subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231. This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

The Government argues that because Grier did not raise the appealed issues in the District Court, the plain error standard applies pursuant to Federal Rule of Criminal Procedure 52(b). The Supreme Court recently reaffirmed its interpretation of Rule 52(b), stating that

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. . . . If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Cotton*, 535 U.S. 625, 631-32 (2002) (quotations and internal citations omitted).

Grier asserts that this court's review of his due process and fundamental fairness claims is plenary. However, he offers no authority to support this claim. As the Government correctly argues, "[c]alling the district court's alleged error in this case one of 'constitutional dimension' does not change the analysis." Br. of Appellee at 11. "[A] constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right." *Yakus v. United States*, 321 U.S. 414, 444 (1944).

Although we believe the Government is correct in its assertion that, under the circumstances here, plain error review is appropriate, we will also examine Grier's legal contention de novo to avoid any subsequent misunderstanding of the scope of our holding. The outcome of this case would not differ.

## III.

## DISCUSSION

### A. Continued Validity of the National Firearms Act

Grier argues first that the FOPA, which amended the Gun Control Act, implicitly repealed the NFA provisions under which he was charged and sentenced. The NFA prohibits the transferring, making, or possessing of machine guns[2] without paying taxes on the weapons and registering as a firearms dealer. 26 U.S.C. § 5861. The NFA also provides that applications for registration shall be denied if the transfer, possession or making of the firearm would be illegal. 26 U.S.C. §§ 5812, 5822. The FOPA makes it "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(*o*)(1). The FOPA thus makes it legally impossible for machine gun dealers to register

---

2. The NFA defines a machine gun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b).

under the NFA, as the transfer and possession of such firearms manufactured after May 19, 1986 (when the FOPA became effective) is illegal. This court has sustained the constitutionality of 18 U.S.C. § 922(*o*). *Rybar*, 103 F.3d at 273.

Grier argues that, "[a]lthough Congress was silent on the impact that § 922(*o*) would have on the [NFA] provisions, the import of the subsequent legislation was to render meaningless the registration and tax provisions of the former." Br. of Appellant at 13. Grier relies exclusively on *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992), as authority for this claim. In *Dalton*, the Court of Appeals for the Tenth Circuit vacated a conviction under 26 U.S.C. § 5861(d), holding that Congress implicitly repealed this NFA provision when it enacted § 922(*o*). *Id.* at 125-26. Grier also points to the approval by the Court of Appeals for the Ninth Circuit, in dicta, of the *Dalton* court's analysis. *United States v. Kurt*, 988 F.2d 73, 75-76 (9th Cir. 1993). The Ninth Circuit, however, later overruled this position in *Hunter v. United States*, 73 F.3d 260, 261-62 (9th Cir. 1996), leaving *Dalton* as the only case authority supporting Grier's reasoning.

Since *Dalton* was decided, the Courts of Appeals in six circuits have rejected its reasoning and concluded to the contrary that the FOPA did not implicitly repeal the NFA registration and taxation provisions. *United States v. Elliott*, 128 F.3d 671, 672 (8th Cir. 1997); *Hunter*, 73 F.3d at 261-62; *United States v. Rivera*, 58 F.3d 600, 601-02 (11th Cir. 1995); *United States v. Ardoin*, 19 F.3d 177, 179-80 (5th Cir. 1994); *United States v. Ross*, 9 F.3d 1182, 1193-94 (7th Cir. 1993), *vacated on other grounds*, 511 U.S. 1124 (1994); *United States v. Jones*, 976 F.2d 176, 182-83 (4th Cir. 1992). These courts began their analysis with the premise that, "[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for repeal by implication is when the earlier and later statutes are *irreconcilable*." *Jones*, 976 F.2d at 183 (emphasis in original) (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974)). In the view of these courts, the two statutes are easily reconcilable because one can comply with both the NFA provisions and the FOPA "by refusing to

deal in newly-made machine guns." *Id.* Since the "two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." *Mancari*, 417 U.S. at 551.

We agree with the reasoning of these courts supporting the continuing validity of the NFA provisions, and we reject Grier's argument to the contrary. Accordingly, the District Court's acceptance of Grier's guilty plea to the charges of conspiracy to transfer, make, and possess, and transferring, making, and possessing unregistered machine guns in violation of 26 U.S.C. § 5861 was not plain error. Giving the issue plenary review, we also conclude that the NFA has not been implicitly repealed.

## B. Grier's Due Process Challenge to Conviction under the NFA

Grier's second argument is that his conviction under the NFA offends due process and fundamental fairness. Specifically, Grier argues that § 922(*o*)'s enactment made it legally impossible for him to comply with the NFA's registration and tax requirements. He reasons that because the NFA provides that applications for registration shall be denied if the transfer, making, or possession of the firearm would be illegal, the FOPA's ban on all new machine guns renders *any* transfer or possession of such guns violative of the NFA. Under Grier's theory, the failure to register and pay taxes on firearms was an essential element of the crimes for which he was sentenced. He concludes that because he was incapable of performing an essential element, he cannot be held criminally liable for that crime.

To support his argument, Grier again relies solely on *Dalton.* The problem with Grier's claim, however, is that he could have complied with both statutes by simply not possessing, transferring, or making machine guns. *Ardoin*, 19 F.3d at 180; *Jones*, 976 F.2d at 183. Moreover, given the two equally valid and applicable statutes, "there is nothing wrong with the government's decision to prosecute under one and not the other, so long as it does not discriminate against any class of defendants . . . ." *Jones*, 976 F.2d at 183 (citing *United States v. Batchelder*, 442 U.S. 114, 123-23 (1979)). The District Court therefore properly rejected Grier's due process claim.

## C. Constitutional Challenge to Congress' Power to Enact the NFA

Grier raises, lastly, the issue of whether the NFA remains on sound constitutional basis given the FOPA's enactment. When the constitutionality of the NFA was originally challenged in the Supreme Court, the Court interpreted the NFA as a revenue raising measure passed under Congress' taxing authority. In *Sonzinsky v. United States*, 300 U.S. 506 (1937), the Court stated that the NFA "[o]n its face [was] only a taxing measure" and that any indirect regulatory effects of the taxes did not undermine Congressional authority to pass the law under its taxing power. *Id.* at 513. Grier argues that with the enactment of § 922(*o*) the NFA's function as a revenue generating scheme was eliminated and, in the process, the constitutional legitimacy of the NFA was destroyed.

The six circuits that have rejected *Dalton*'s view on the FOPA's implicit repeal of the NFA have also rejected *Dalton*'s position that the NFA lacks a constitutional basis after the enactment of § 922(*o*). The Court of Appeals for the Fifth Circuit, for example, reasoned that though the ATF "chooses not to allow tax payments or registration [of machine guns], it still has the authority to do so. Thus, the basis for ATF's authority to regulate—the taxing power—still exists; it is merely not exercised." *Ardoin*, 19 F.3d at 180. More importantly, the Supreme Court has stated that "[a] statute does not cease to be a valid tax measure . . . because the revenue obtained is negligible, or because the activity is otherwise illegal." *Minor v. United States*, 396 U.S. 87, 98 n.13 (1969). The Court's position is particularly applicable to the NFA which, despite § 922(*o*), still retains some revenue generating capacity. As the Government notes, "to the extent that it remains lawful under § 922(*o*) to transfer machineguns manufactured before May 1986, those transfers require the payment of tax." Br. of Appellee at 17; *see also* 18 U.S.C. § 922(*o*)(2)(B) (exempting machine guns lawfully possessed before the subsection was passed from the ban). Thus, the NFA remains a proper exercise of the congressional taxing power under the Constitution.

## IV.

## CONCLUSION

For the foregoing reasons, we reject all of Grier's challenges to the NFA, and will affirm his judgment of conviction and sentence.

A True Copy:
  Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*