*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0079P (6th Cir.)
File Name: 04a0079p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

*v.*

RUFUS A. THOMPSON III
(02-5916); GREGORY POTTER
(02-5917),
        *Defendants-Appellants.*

Nos. 02-5916/5917

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-00116—Robert L. Echols, Chief District Judge.

Submitted: December 11, 2003

Decided and Filed: March 17, 2004

Before: BATCHELDER and SUTTON, Circuit Judges;
BELL, Chief District Judge.[*]

─────────────

[*] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

─────────────

## COUNSEL

**ON BRIEF:** Dwight E. Scott, Nashville, Tennessee, T. Clifton Harviel, Jr., HARVIEL LAW OFFICE, Memphis, Tennessee, for Appellants. Van S. Vincent, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

─────────────

## OPINION

─────────────

SUTTON, Circuit Judge. After firebombing two houses with Molotov cocktails, Rufus A. Thompson III and Gregory Potter were charged, then convicted, of violating several federal laws, including 26 U.S.C. § 5861(d), which prohibits the possession of an unregistered firearm. Separately, and as a result of the same incident, the jury also convicted Thompson of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). The defendants challenge their convictions under § 5861(d), first as violating due process, then as exceeding Congress's taxing power. Thompson independently argues that his § 922(g)(1) conviction exceeds Congress's Commerce Clause powers. We reject each argument and affirm.

I.

Rufus Thompson was a crack dealer in Nashville, Tennessee. Two of his customers were Gregory Potter and William Hunnicutt, who "earned" their drugs by handling various odd jobs for Thompson. One job involved the burning of two houses, whose occupants had complained to the police about Thompson's drug trafficking. Thompson suggested that Potter and Hunnicutt use Molotov

cocktails—home-manufactured explosives made from glass bottles, gasoline and cloth fuses—to carry out the task. Consistent with this plan, Potter and Hunnicutt firebombed both houses with homemade Molotov cocktails on April 28 and 30, 2001.

A federal grand jury indicted Thompson and Potter on a litany of statutory violations for the firebombings, only two of which have any bearing on this appeal. First, the grand jury indicted both individuals for failing to register their "firearms" (the Molotov cocktails) in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d). Second, the grand jury indicted Thompson for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Thompson and Potter filed motions to dismiss both charges. As to the charges under § 5861(d), Potter argued that his indictment violated due process while Thompson argued that his indictment exceeded Congress's taxing authority. In support of each argument, the defendants claimed that it was "legally impossible" to comply with the registration requirements of the statute. As to the charge under § 922(g)(1), Thompson argued that the indictment exceeded Congress's power under the Commerce Clause. The district court denied each motion, and the jury convicted both men on their respective charges. In considering their appeals, we give de novo review to the district court's constitutional rulings. *United States v. Napier*, 233 F.3d 394, 397 (6th Cir. 2000).

## II.

Among many other commands, the National Firearms Act, codified at 26 U.S.C. § 5801 *et seq.*, prohibits individuals from receiving or possessing a firearm that is not registered in the National Firearms Registration and Transfer Record. *See* 26 U.S.C. § 5861(d). The registration provision works hand-in-glove with taxes that the statute imposes on the

transfer and manufacture of firearms covered by the Act. *See id.* §§ 5811, 5821. To register covered firearms (and pay applicable taxes), an individual must apply to the Secretary of the Treasury. *See id.* §§ 5812, 5822. Under the Act, however, "[a]pplications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." *Id.* § 5812.

Thompson and Potter contend that the registration provision makes no sense with respect to Molotov cocktails. Had they applied to the Secretary of the Treasury to register their Molotov cocktails, they note, the Secretary assuredly would have denied their applications because possession of the explosives placed them "in violation of law." As they observe, Tennessee law outlaws the knowing possession of "an explosive or an explosive weapon," Tenn. Code Ann. § 39-17-1302(a), language that one Tennessee court in an unpublished decision has interpreted to encompass Molotov cocktails. *See State v. Jackson*, No. E1999-02013-CCA-R3-CD, 2001 WL 740707, at *5 (Tenn. Crim. App. June 29, 2001). Relying on these legal and factual predicates, Potter argues that the provision violates due process and Thompson argues that it exceeds Congress's taxing power.

## A.

Because Tennessee bans the possession of Molotov cocktails and because the Secretary accordingly would have denied an application to register these explosives, Potter argues that it was legally impossible for him to comply with the registration provision, 26 U.S.C. § 5861(d). Invoking *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992), which granted relief on a comparable claim, Potter contends that it would be "fundamentally unfair" and a violation of due process to convict him for failing to comply with a statute with which it was not possible to comply. Potter Br. at 14.

Even granting for a moment the assumption that the Secretary would have denied an application to register a Molotov cocktail, Potter errs in arguing that he could not comply with 26 U.S.C. § 5861(d). In a case involving analogous facts, we rejected a comparable argument. *See United States v. Bournes*, 339 F.3d 396 (6th Cir. 2003). There, the defendant challenged a conviction under § 5861(d) for failing to register a weapon (a machine gun), possession of which is outlawed by 18 U.S.C. § 922(o). And there, following the cue of *United States v. Jones*, 976 F.2d 176, 182–83 (4th Cir. 1992), and rejecting the analysis of *Dalton*, we reasoned that "compliance with the relevant provisions [of the two statutes] is easily achieved: Bournes could have complied simply by electing not to possess the machine guns at issue." *Bournes*, 339 F.3d at 399; *accord United States v. Grier*, 354 F.3d 210, 214 (3d Cir. 2003). Potter had a similar remedy. He too could have complied with § 5861(d) and Tennessee law by opting not to make, then possess, the Molotov cocktails in the first instance.

Nor has Potter presented us with any reason why it makes a difference in this case that his legal-impossibility conundrum arises from a combination of state and federal law, as opposed to two federal statutes. In both settings, a comparable answer to impossibility exists: decline to possess the illegal weapon. *See United States v. Djelaj*, 842 F. Supp. 278, 281 (E.D. Mich. 1994) (sustaining a conviction under § 5861(d) for failing to register a Molotov cocktail, possession of which is forbidden by Michigan law, in the face of a legal impossibility challenge). In the end, Circuit precedent (*Bournes*) controls and forecloses Potter's due process argument.

### B.

Thompson raises a similar argument. Based on the alleged impossibility of registering the Molotov cocktails in the National Firearms Registration and Transfer Record,

Thompson contends that his conviction constitutes an unconstitutional exercise of Congress's taxing power, also citing *United States v. Dalton*, 960 F.2d 121, 124–25 (10th Cir. 1992). He contends that the National Firearms Act permits convictions that bear no "relation, rational or otherwise," to revenue collection, because he would not have been permitted to register the Molotov cocktails and thus could not have paid the tax even if he had tried to do so. Thompson Br. at 13. Absent any true connection to tax collection, he argues, the convictions under § 5861(d) necessarily exceed congressional authority.

To the extent Thompson means to raise a facial challenge to § 5861(d), the claim has little to recommend it and much to overcome. As the United States Supreme Court has made clear, the registration provision is "obviously supportable as in aid of a revenue purpose." *Sonzinsky v. United States*, 300 U.S. 506, 513 (1937). The registration requirement of § 5861(d) is "'part of the web of regulation aiding enforcement of the transfer tax provision in § 5811. Having required payment of a transfer tax and having required registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons . . . [to] discourage[] the transferor . . . from transferring the firearm without paying the tax.'" *United States v. Birmley*, 529 F.2d 103, 106–07 (6th Cir. 1976) (quoting *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972)).

Thompson does little better in arguing that the registration requirement, as applied to him, exceeds the national taxing power. Aside from the Tenth Circuit in *Dalton*, every Circuit to consider this type of claim has rejected it. *See Grier*, 354 F.3d at 215; *United States v. Rogers*, 270 F.3d 1076, 1079–80 (7th Cir. 2001); *Hunter v. United States*, 73 F.3d 260, 262 (9th Cir. 1996); *United States v. Dodge*, 61 F.3d 142, 146 (2d Cir. 1995); *United States v. Ardoin*, 19 F.3d 177, 179–80 (5th Cir. 1994); *Jones*, 976 F.2d at 182–83. So now do we.

Echoing his co-defendant's claim, Thompson argues that §§ 5812 and 5822 prevented him from registering and paying manufacture or transfer taxes on the Molotov cocktails. As a result, he claims, criminalizing his failure to register his firearms is not rationally related to the collection of taxes.

This argument might well have force if Thompson in fact had sought to register the firearms, but had been denied permission to do so by the Secretary. In that setting, it would be difficult to perceive the rationality of the statute. But, here, Thompson has offered no explanation why he should be permitted to hypothesize what the Secretary would do with his application, then premise his claim that the statute has no rational connection to taxation on that speculation. The relevant statute says that "it shall be unlawful for any person . . . to . . . possess a[n] [unregistered] firearm." 26 U.S.C. § 5861(d). At the time of his arrest, Thompson's firearms were unregistered—not because he was denied permission to register them but because he never tried to register them. It does not offend the modest requirements of rationality to require the individual first to seek the Secretary's views on such a matter and to show that he was actually prevented from registering his firearms. Because neither Thompson nor his co-conspirators attempted to register the Molotov cocktails, no one can say with certainty what the Secretary of the Treasury would have done with his application. *See United States v. Mise*, 240 F.3d 527, 530 (6th Cir. 2001) (noting that Mise had not presented evidence that he applied to register his pipe bomb); *United States v. Aiken*, 974 F.2d 446, 449 (4th Cir. 1992) (in the absence of evidence to the contrary, court must assume that registration of short-barreled shotgun would be allowed). And that is particularly significant in view of the undisputed fact that the Secretary has *authority* to register and tax illegal weapons. *Grier*, 354 F.3d at 215; *Ardoin*, 19 F.3d at 180; *see also Dep't of Revenue v. Kurth Ranch,* 511 U.S. 767, 778 (1994) (unlawful activity may be taxed); *Marchetti v. United States*, 390 U.S. 39, 44 (1968) (same); *see also, e.g.,* 26 U.S.C. § 4401 (taxing legal and illegal bets).

No doubt, it may seem odd to require an application to register Molotov cocktails—whether before or after manufacture. And, no doubt, it may seem odd to require an application that perhaps would have been denied by the Secretary. Yet it would be odder still if we were to defer to *Thompson's* interpretation of the interplay between the federal and state statutes at issue—and specifically the meaning of Tennessee law—and *his* conclusion that the Secretary would not permit him to register and pay the tax. If Thompson wishes to complain that the scheme is utterly devoid of a taxing purpose because it was impossible for him to register his weapons, then he must demonstrate that it was truly, and not merely hypothetically, impossible to obtain the registration.

### III.

Thompson separately argues that his felon-in-possession-of-a-firearm conviction should be reversed because 18 U.S.C. § 922(g)(1) exceeds the National Legislature's power to regulate interstate commerce under the Commerce Clause. We disagree.

Section 922(g)(1) makes it unlawful for a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Thompson is not the first criminal defendant to challenge the validity of the provision in the aftermath of *United States v. Lopez*, 514 U.S. 549 (1995). After *Lopez*, we rejected a facial challenge to § 922(g)(1) under the Commerce Clause. *See United States v. Chesney*, 86 F.3d 564, 568–69 (6th Cir. 1996). So, too, has every other court of appeals. *See United States v. Williams*, 128 F.3d 1128, 1133–34 (7th Cir. 1997) (citing cases).

In rejecting this argument, our Circuit has relied in large part on the presence of a jurisdictional element in the statute—the requirement that the firearm must be "in or affecting commerce"—to distinguish § 922(g) from the Guns Free School Zone Act, which *Lopez* invalidated. This jurisdictional element, we have held, "ensures [that] only those activities affecting interstate commerce fall within [§ 922(g)'s] scope." *United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999).

In challenging this line of reasoning, Thompson argues that the presence of a jurisdictional element does not by itself ensure that the statute falls within Congress's commerce power. Recent decisions by the Supreme Court in *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000), he adds, cast doubt on this Court's holdings that the jurisdictional element of § 922(g) satisfies Commerce Clause constraints.

Still more-recent precedent from this Circuit, however, forecloses Thompson's argument. In *United States v. Napier*, 233 F.3d 394 (6th Cir. 2000), we took a second look at the constitutionality of § 922(g) in view of *Morrison* and *Jones*. While *Morrison* and *Jones* in their own way each reinforced the central lessons of *Lopez*—that Congress's power to regulate commerce is not boundless and that the courts have a responsibility to police the outer limits of that power—*Napier* concluded that § 922(g) satisfies the modest demands of these precedents because it requires a "'minimal nexus that the firearm have been, at some time, in interstate commerce.'" *Napier*, 233 F.3d at 401 (quoting *Scarborough v. United States*, 431 U.S. 563, 575 (1977)).

Nor may *Napier* be distinguished on the ground that it involved a conviction under § 922(g)(8) rather than under § 922(g)(1). Both provisions criminalize possession of a firearm, and the same jurisdictional element governs both provisions. The only difference between them is that

§ 922(g)(1) applies to felons while § 922(g)(8) applies to persons subject to domestic violence restraining orders. That distinction, however, does not offer a tenable basis for differential treatment, and Thompson himself has offered no explanation for drawing such a distinction. In all material ways, *Napier* controls.

Because *Napier* supplies the governing legal precedent and because the Government presented evidence at trial that the constituent parts used to make these Molotov cocktails—the beer bottles and gasoline—had moved in interstate commerce, we reject Thompson's constitutional challenge. Thompson has not argued, and does not argue, that the firearms themselves (the Molotov cocktails), as opposed to their constituent parts (the beer bottles and gasoline), must satisfy the jurisdictional element of § 922(g)(1). We accordingly need not consider that distinct question, *compare United States v. Stewart*, 348 F.3d 1132, 1138 (9th Cir. 2003) (holding that link between defendant's homemade manufacture of machine gun and interstate commerce was "too tenuous to justify federal regulation"), *with United States v. Gresham*, 118 F.3d 258, 265–66 (5th Cir. 1997) (rejecting argument that movement of component parts of pipe bomb in interstate commerce was insufficient to sustain § 922(g)(1) conviction), which *Napier* does not directly address.

IV.

For the foregoing reasons, we affirm.