**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Robert William TARRANT, a/k/a Bob**
**Tarrant, Defendant-Appellant.**

**No. 71-2306.**

United States Court of Appeals,
Fifth Circuit.

May 15, 1972.

Rehearing Denied June 16, 1972.

Percy Foreman, Dick DeGuerin, Foreman and DeGuerin, Houston, Tex., Charles Alan Wright, Austin, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Allen L. Chancey, Jr., Sp. Asst. U. S. Atty., Laurence S. McWhorter, Sp. Atty., Department of Justice, Washington, D. C., Edward B. McDonough, Jr., Donald B. McFall, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Robert William Tarrant appeals from jury convictions on five counts alleging violations of 26 U.S.C.A. § 5861(d) (Supp.1972) (unlawful possession of unregistered firearms). We affirm.

### I.

The firearms in question were seized in Tarrant's home pursuant to a search warrant. The first of the issues on this appeal is framed as an attack on the validity of that warrant. The warrant is pictured as lacking in probable cause because the three factual circumstances relied upon to support that essential finding eventuated from either illegal police conduct or were insubstantial per se.

The first such circumstance and the only one we reach, concerned the visit of a Houston, Texas police officer, Allen, to Tarrant's home to view Tarrant's gun collection. Unquestionably, Allen went to the home as a clandestine representative of the Alcohol, Tobacco, and Firearms Division of the Treasury Department (ATF) for the purpose of obtaining evidence of illegal possession of unregistered firearms. But just as undisputedly, Tarrant invited Allen into his home. This invitation resulted from a long-standing casual friendship nourished by a mutual interest in firearms. Allen observed the illicit firearms and turned this information over to ATF agents who in turn used it to obtain the warrant.

Tarrant claims that this evidence was obtained in violation of his Fourth, Fifth and Sixth Amendment rights. In the Fourth Amendment context, Tarrant argues that since Allen could not have conducted a lawful search he accomplished his illicit ends by ruse and trickery in fraudulently contriving an invitation from Tarrant. The district judge found, on a motion to suppress, that on several occasions prior to the sojourn in question Tarrant and Allen had discussed the conversion of a semi-automatic AR–15 rifle into a fully automatic weapon, and that Tarrant had offered to instruct Allen in this procedure. On this particular evening, Allen drove unannounced to Tarrant's home. When Tarrant met him at the front of the house, he declared he had come for his promised lesson in AR–15 conversion. It was at this point that the invitation was extended.

Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) sharply clarifies the issue involved. Here, as in *Hoffa*, a person known to the defendant entered the defendant's quarters in order to obtain evidence of criminal conduct. In both cases, the Government informer gained entrance by invitation, and in neither case did the informer disclose his true purpose. There is but one difference in the two cases; however, that distinction is crucial to our decision. In *Hoffa*, the informer solicited his invitation from Hoffa for genuine reasons, and it was only after he had received his invitation that he changed colors and became an

informer.[1] Here, the reason used to seek the invitation was concededly a pretext to gain entrance to Tarrant's home. Allen was an informer from the beginning. The question is whether Allen's dissimulation distinguishes *Hoffa* from the instant case.

■■ The Supreme Court in *Hoffa* held that when Hoffa made incriminating statements to the informer he was not relying upon any expectation of privacy, but rather was relying upon a misplaced confidence in the informer. Similarly, Tarrant was relying upon a misplaced confidence that Allen would not disclose the existence of the illegal firearms. Obviously Tarrant's confidence in Allen was not affected by the fact that Allen's entrance was pretextual. So far as Tarrant is concerned, the reason given by Allen for wanting an invitation was as genuine on its face as the reasons given by the informer to Hoffa.[2] We conclude that this case is indistinguishable from *Hoffa,* and that Tarrant's Fourth Amendment rights have not been violated.[3]

Tarrant relies upon Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) to argue that incriminating evidence was obtained by Allen during this visit in violation of Tarrant's Sixth Amendment right to counsel. Subsequent to the time Massiah had been indicted and released from custody, his co-indictee decided to become a government informer. After making this decision, the co-indictee induced Massiah to make inculpatory statements concerning the crimes alleged in the indictment, which were overheard by an eavesdropping federal agent. The Supreme Court held that since Massiah was under indictment he was entitled to the aid of counsel, and thus that the statements should have been suppressed.

Plainly the Government was continuing its investigation for additional evidence relating to these crimes after the indictment had been found. Tarrant would have *Massiah* apply to him, even though he was not under indictment at the time of Allen's visit. No such extension of *Massiah* is warranted.

Tarrant points out that an indictment was found against him only nineteen hours after the visit, albeit for the offense of *unlawful transfer* of firearms. In this regard, he refers to the discussion of *Massiah* in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), in which the Supreme Court stated that in the context of this case the fact Escobedo had not been formally indicted would make no difference to *Massiah's* applicability. That context showed *Escobedo* to be in custody and under interrogation while at the same time the police were preventing his attorney from seeing him. We decline to read *Escobedo* to extend *Massiah* to Tarrant's pre-indictment situation. A further cogent reason exists for refusing to extend *Massiah* to a case such as the one at bar. In *Massiah,* the police were attempting to obtain further evidence pertaining to the crimes for which Massiah had already been indicted. Here the police were investigating the possibility of further violations of the law. Tarrant's construction of *Massiah* would successfully efface even clearly indicated further efforts by the police to ferret out additional violations, once they had proof of any criminal conduct.

Thus we hold that the information in the search warrant affidavits relating to Allen's visit to Tarrant's home was not the product of illegal police conduct. This information was sufficient per se to establish probable cause. Thus we need not consider Tarrant's remaining

---

1. The informer in *Hoffa* was a local Teamster official who wanted to discuss Teamster business with Hoffa as well as his own personal criminal difficulties.

2. We intimate no judgment as to the applicability of the Fourth Amendment if Allen had been a stranger to Tarrant.

*See* Hoffa v. United States, 385 U.S. at 301 n. 6, 87 S.Ct. 408, 17 L.Ed.2d 374.

3. Tarrant erroneously relies upon United States v. Prudden, 5 Cir., 424 F.2d 1021, 1032 and especially note 21. *Prudden* is not an informer-misplaced confidence case.

attacks on the illegality or insufficiency of the other allegations in the affidavits. Howell v. Cupp, 427 F.2d 36 (9th Cir. 1970); United States v. Sterling, 369 F.2d 799 (3d Cir. 1966).

## II.

■ Tarrant claims that the evidence was insufficient to support the verdict in Count Four of the indictment. He argues (1) that the weapon in question was described in the indictment as a .410 shotgun when in fact it was a ".40 caliber pistol shotgun"; (2) that because of this variance, the weapon should not have been admitted; and (3) without this weapon the evidence against him on this count would have been insufficient. The Government responds that the weapon is an unusual one and could not have been more aptly described. We agree. In addition, Tarrant has not demonstrated any prejudice from this "variance".

## III.

Based upon proof that he had five improper guns in his custody, Tarrant was convicted on five counts of possession of unregistered firearms. He argues that under Section 5861(d) his simultaneous possession of five firearms constitutes but one offense. Section 5861(d) reads that it is unlawful "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record;". Tarrant asserts that the statute is not clear that separate offenses are intended, and thus the rule of lenity should apply to prevent a single transaction from turning into multiple offenses. Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L. Ed.2d 199 (1958); Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed.2d 905 (1955).

We would agree that the words of Section 5861(d) are just as ambiguous as the provisions involved in Ladner and

Bell.[4] But our analysis cannot cease with a bare comparison of language. In Bell, the Supreme Court looked to the legislative history and statutory scheme but found neither source provided aid in construing Congressional intent. Admittedly the legislative history here furnishes no guidance, but an examination of the statutory scheme convinces us that Congress intended the possession of five firearms to constitute five separate offenses.

The legislative purpose behind enactment of Section 5861(d) was succinctly stated in United States v. Ross, 458 F.2d 1144 (5th Cir. 1972).

Section 5861(d) making possession of an unregistered weapon unlawful is part of the web of regulation aiding enforcement of the transfer tax provision in § 5811. Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons. Such a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax.

■ This legislative purpose clarifies congressional intent to collect the transfer tax payable on *each* firearm transferred. Each possession of an unregistered firearm by Tarrant deprived the Government of the proper tax due and owing on that weapon. Since Congress was interested in collecting the tax on each weapon, clearly separate offenses for each firearm were intended to provide incentive for sellers and buyers to declare their weapons and pay the tax. Therefore, we conclude that Tarrant was properly convicted of all five possession counts.[5]

The judgment is

Affirmed.

---

4. *See also* United States v. Carty, 447 F.2d 964 (5th Cir. 1971), a case which simply cited Bell with little further discussion.

5. The Tenth Circuit has reached the same result but for different reasons. Sanders v. United States, 441 F.2d 412 (10th Cir. 1971).