In the

# United States Court of Appeals

### For the Seventh Circuit

No. 05-2419

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MODINA LIM,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-CR-185-S-01—**John C. Shabaz**, *Judge.*

ARGUED OCTOBER 28, 2005—DECIDED APRIL 14, 2006

Before EASTERBROOK, MANION and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Modina Lim was convicted of knowingly and unlawfully possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d). Lim appeals the district court's rejection of his constitutional challenges to this statute. We affirm.

## I.

On September 13, 2004, Lim brought an unregistered 12 gauge, single-shot, sawed-off shotgun into a Madison, Wisconsin gun shop for repair. The store notified police, who then confronted Lim. The shotgun was a Brazilian

manufactured E.R. Amantino shotgun with a barrel that had been shortened to a length of 14½ inches; the overall length of the shotgun was 24 inches.

The National Firearms Act, 26 U.S.C. § 5801, *et seq.* (the "Act"), establishes a statutory framework to ensure that manufacturers, importers, and dealers of firearms pay a tax upon and properly register all firearms prior to transfer. Section 5845(a)(2) defines the term "firearm" to include, as relevant here, "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." Section 5811 requires the transferor to pay a tax on each firearm transferred. Section 5841(b) additionally requires that each transferred firearm be registered to the transferee by the transferor in the National Firearms Registration and Transfer Record (the "Firearms Record"). And section 5861(d) prohibits any individual from "receiv[ing] or possess[ing] a firearm which is not registered to him in the [Firearms Record]."

A grand jury in the Western District of Wisconsin charged Lim in a single-count indictment with possession of a firearm, made from a shotgun, with an overall length of less than 26 inches and a barrel length of less than 18 inches, which was not registered to him in the Firearms Record in violation of section 5861(d). Lim filed a motion to dismiss the indictment which asserted that section 5861(d) is unconstitutional because it: 1) is not a legitimate exercise of Congress's taxing power, 2) violates Lim's Fifth Amendment right against compulsory self-incrimination, and 3) is unconstitutionally vague because the statutory definition of the pertinent "firearm" (*i.e.*, a sawed-off shotgun) fails to provide a definition of "barrel" or the specific means of measuring a shotgun barrel. The magistrate judge recommended that Lim's motion be denied, and the district court adopted the magistrate judge's report and recommendation. Lim subsequently pled guilty while reserving his right to

appeal the denial of his motion to dismiss. He was sentenced to a 27-month prison term.

## II.

### A.

The United States Constitution, Art. I, § 8, cl. 1, grants Congress the power to lay and collect taxes. Inherent in the power to tax is the prerogative to decide what to tax and how large of a tax to impose. Those choices will have regulatory effects in the sense that the more heavily a particular activity is taxed, the more people will be deterred from engaging in that activity. Yet, the Supreme Court has rejected the notion that the regulatory character of tax legislation renders the legislation an invalid exercise of the taxing power:

> Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any less a tax because it has a regulatory effect, and it has long been established that an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed.

*Sonzinsky v. United States*, 300 U.S. 506, 513, 57 S. Ct. 554, 555-56 (1937) (citations omitted). The Court has also evinced a willingness to tolerate companion provisions that are overtly regulatory so long as they have a plausible nexus to taxation. Thus, in *Sonzinsky*, the Court cited the registration provisions of an earlier version of the Act at issue here as a legitimate exercise of the taxing power because, notwithstanding their regulatory character, they were "obviously supportable as in aid of a revenue purpose." *Id.* at 513, 57 S. Ct. at 555.

Lim contends that section 5861(d) exceeds Congress's taxing power because the purpose of the statute is not to tax, but instead to prohibit the possession of certain firearms.[1] However, when taken in context with the rest of the statute, section 5861(d) reasonably may be construed as "part of the web of regulation aiding enforcement of the transfer tax provision in section 5811." *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972). Congress legitimately may target for punishment the recipient of an unregistered firearm as a means of discouraging the circumvention of the transfer tax: "'Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of an unregistered firearm.'" *United States v. Gresham*, 118 F.3d 258, 262 (5th Cir. 1997) (quoting *Ross* at 1145). Although the transferee is not responsible for registering the firearm (and indeed cannot do so), the Act imposes on him "an affirmative duty to ensure that the weapon is properly registered before taking possession of it." *United States v. Khatib*, 706 F.2d 213, 216 (7th Cir. 1983); *see also United States v. Freed*, 401 U.S. 601, 91 S. Ct. 1112 (1971); *United States v. Brown*, 548 F.2d 204, 209 (7th Cir. 1977). Indeed, unregistered firearms are as likely (if not more likely) to come to the attention of law enforcement in the hands of the transferee. Attaching criminal consequences to the possession of an unregistered weapon is thus a rational way of discouraging the transfer of untaxed firearms. Section 5861(d) in this way encourages registration and reinforces the revenue-generating purpose of the Act. This is a constitutional exercise of Congress's taxing power.

---

[1] The Government does not alternatively defend this Act under the Commerce Clause, *see* U.S. Const., Art. I, § 8, cl.3, and therefore we do not consider whether the Act may be sustained as an exercise of congressional Commerce Clause authority.

Lim nonetheless contends that section 5861(d) is not a valid use of the taxing power as applied to him because it was impossible for him to register the particular weapon he possessed. Lim relies on *United States v. Dalton*, 960 F.2d 121, 123-25 (10th Cir. 1992), which held that a provision adopted under Congress's taxing authority loses its constitutional legitimacy when the subject of the provision can no longer legally be possessed. In *Dalton*, the defendant had received and possessed a machine gun created after 1986, an act that was forbidden by 18 U.S.C. § 922(o). Because the statute proscribed possession of the machine gun and therefore made it impossible for the defendant to register the firearm, the court held that section 922(o) "'removed the constitutional legitimacy of registration as an aid to tax [collection].'" *Id*. at 125 (quoting *United States v. Rock Island Armory, Inc.*, 773 F.Supp. 117, 125 (C.D.Ill. 1991), *appeal dismissed*, No. 91-2595, 1991 WL 224268 (7th Cir. Aug. 13, 1991).[2]

---

[2] In *United States v. Ross*, this circuit joined a majority of our sister circuits in rejecting the rationale of *Dalton*. 9 F.3d 1182, 1193-94 (7th Cir. 1993), *vacated and remanded on other grounds*, 511 U.S. 1124, 114 S. Ct. 2129 (1994); *see United States v. Grier*, 354 F.3d 210, 214 (3d Cir. 2003) (collecting cases disagreeing with *Dalton*). Instead, we chose to adopt the reasoning of *United States v. Jones*, 976 F.2d 176, 183 (4th Cir. 1992). *Jones* held that 26 U.S.C. § 5861 and 18 U.S.C. § 922(o) are not irreconcilable because an individual can comply with both statutes simply by refusing to deal in machine guns manufactured after the effective date of section 922(o). In addition, the court held that section 922(o) does not undercut the constitutional basis for registration because the government still taxes the making of illegal machine guns, *see* 26 U.S.C. § 5821, and "clearly, knowing the chain of possession and transfer assists in determining who made the firearm and hence is 'supportable as in aid of a revenue purpose." *Jones*, 976 F.2d at 183-84 (quoting *Sozinsky*, 300 U.S. at 513, 57

(continued...)

*Dalton*, however, readily may be distinguished, because "'there is no statutory ban on the registration of short-barreled shotguns.'" *United States v. McCollom*, 12 F.3d 968, 971(10th Cir. 1993) (quoting *United States v. Tepper*, 793 F.Supp. 270, 272 (D. Colo. 1992)). The lawful possession of a sawed-off shotgun is possible under *both* federal law and Wisconsin law.[3] This case is therefore akin to *United States v. Copus*, which held that the logic of *Dalton* does not apply when there is "no provision comparable to § 922(o) that bans outright the possession" of the weapon involved. 93 F.3d 269 (7th Cir. 1996) (distinguishing *Dalton* vis-à-vis possession of silencers). In short, "the registration of [Lim's sawed-off shotgun] was not a legal impossibility.*" McCollom*, 12 F.3d at 971. It does not matter that Lim could not *personally* register or pay the tax on the shotgun. *Dalton*'s holding is limited to instances where registration of the firearm by anyone along the chain of possession cannot legally occur. Because at some previous point Lim's sawed-off shotgun could have been registered, Lim's reliance on *Dalton* fails.[4] Section 5681(d), as applied to Lim's possession of the sawed-off shotgun, is a valid use of Congress's taxing power.

---

(...continued)
S. Ct. at 555). *See also United States v. Rogers*, 270 F.3d 1076, 1079-80 (7th Cir. 2001).

[3] Wisconsin Statute 941.28(4) allows for the possession of a short-barreled shotgun by "any person who has complied with the licensing and registration requirements under 26 U.S.C. § 5801 to § 5872."

[4] Even if possession of a sawed-off shotgun were banned outright in Wisconsin, we would still reject Lim's reliance on *Dalton* because Lim could have complied with both the registration requirement and the ban on possession by refraining from possessing the gun in Wisconsin. *See United States v. Rogers*, *supra*, 270 F.3d at 1079; *see also supra* n.2.

**B.**

Lim also argues that section 5861(d) is unconstitutional because it violates his Fifth Amendment right against compulsory self-incrimination. 26 U.S.C. § 5848 generally prohibits the use of information supplied in compliance with the registration requirement in a criminal prosecution of the registrant. Nonetheless, Lim posits that the registration mandate violates the Fifth Amendment rights of any individual who attempts to possess a sawed-off shotgun in violation of state law, in that the data collected by the Internal Revenue Service pursuant to the Act could lead state authorities to other evidence that would enable them to establish the individual's unlawful possession of the firearm. However, in *United States v. Freed*, *supra*, the Supreme Court held that the registration requirement does not violate the Self-Incrimination Clause of the Fifth Amendment because "the Solicitor General has advised us that the information in the hands of the Internal Revenue Service, as a matter of practice, is not available to *state* or other federal authorities, and, as a matter of law, cannot be used as evidence in a criminal proceeding with respect to a prior or concurrent violation of law." 401 U.S. at 605-06, 91 S. Ct. at 1116 (emphasis added). Although Lim contends that the Solicitor General's representation as to the availability of registration data was an insufficient basis for the Court to dismiss the concern he has articulated, we are bound by the Supreme Court's decision in *Freed,* which disposes of Lim's argument.

**C.**

Finally, Lim argues that section 5861(d)'s ban on the possession of an unregistered firearm is unconstitutionally vague because, with respect to sawed-off shotguns, the statute does not define the term "barrel" or explain how to measure the barrel of such a gun. As we have noted,

section 5861(d) makes it unlawful for any person to possess a firearm that is not registered to him in the Firearms Record. Section 5845(a)(2) explicitly defines "firearm" to include a sawed-off shotgun with an overall length of less than 26 inches or a barrel length of less than 18 inches. Although the statute itself does not specify how to measure the exact length of a shotgun's barrel or the total length of the gun, the Code of Federal Regulations, 27 C.F.R. § 479.11, provides clear instruction in that regard.

Vagueness challenges that do not involve First Amendment freedoms must be analyzed as applied to the specific facts of the case at hand. *United States v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 714 (1975). A statute may operate in an unconstitutionally vague manner if it: 1) does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or 2) fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute. *Karlin v. Foust*, 188 F.3d 446, 458-59 (7th Cir. 1999). Lim argues that section 5861(d) is unconstitutionally vague in the first sense because it does not provide fair warning of what is prohibited by specifically defining how to measure the length of the shotgun barrel.

A challenge to a statute's vagueness "rest[s] on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 1857 (1988); *see United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 987 (7th Cir. 1999). A criminal statute must provide notice of the prohibited conduct to "a reasonable degree of certainty," but "the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340, 72 S. Ct. 329, 331 (1952).

In *United States v. Powell*, the Supreme Court held that 18 U.S.C. § 1715, which prohibits the mailing of firearms "capable of being concealed on the person," is not unconstitutionally vague as applied to the mailing of a 22 inch-long sawed-off shotgun. 423 U.S. 87, 93, 96 S. Ct. 316, 320 (1975). Although the statute provided no specific guidance to identify a firearm capable of concealment, the Court nonetheless found the statute sufficiently clear as to the conduct it prohibited:

> [The statute] intelligibly forbids a definite course of conduct: the mailing of concealable firearms. While doubts as to the applicability of the language in marginal situations may be conceived, we think that the statute gave respondent adequate warning that her mailing of a 22-inch-long sawed-off shotgun was a criminal offense.

*Ibid.* The Court acknowledged that Congress might have drafted the statute in more specific terms, as by delimiting the size of the firearms that could not be mailed. *Id.* at 93-94, 96 S. Ct. at 320. But the fact that Congress could have employed "'[c]learer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted" was unconstitutionally vague. *Id.* at 94, 96 S. Ct. at 321 (quoting *United States v. Petrillo*, 332 U.S. 1, 7, 67 S. Ct. 1538, 1541 (1947)).

In the present case, the statute gave Lim more than adequate warning of what is prohibited by defining the minimum length of both the overall shotgun and its barrel. In contrast to the statute at issue in *Powell*, section 5845 supplies the specific measurements that will bring a shotgun within the proscribed zone. Contrary to Lim's argument, "barrel" is not an inherently confusing term. Although, as Lim suggests, there may be marginal situations in which the legality of a sawed-off shotgun will

depend on the particular method used to measure the barrel length, this is not one of them: Lim's shotgun, with an overall length of 24 inches and barrel length of 14½ inches, fell well short of the published minimum lengths. Just as in *Powell*, Lim "has been given clear notice that a reasonably ascertainable standard of conduct is mandated; it is for him to insure that his actions do not fall outside the legal limits." *Id.* at 92, 96 S. Ct. at 320. Furthermore, the pertinent regulation serves to dispel any doubt about the legality of a shotgun in marginal cases where the length of the barrel falls closer to the minimum. The Supreme Court has held that "it is [not unfair] to require that one who deliberately goes perilously close to an area of proscribed conduct shall take risk that he may cross the line." *Boyce Motor Lines*, 342 U.S. at 340, 72 S. Ct. at 331. Because the statute provides fair warning of the type of firearm that cannot be possessed unless it is properly registered, and the statutory definition and regulation prevent arbitrary application, section 5861(d) is not unconstitutionally vague as applied to Lim's possession of the sawed-off shotgun.

### III.

For the reasons we have given, we reject Lim's challenges to the constitutionality of 26 U.S.C. § 5861(d) and AFFIRM his conviction.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*