In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1123

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER M. MOSES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 CR 200—**Lynn Adelman**, *Judge.*

ARGUED OCTOBER 25, 2007—DECIDED JANUARY 22, 2008

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
KANNE, *Circuit Judges*.

KANNE, *Circuit Judge.* Christopher Moses challenges
his five convictions for possessing destructive devices
that were not registered to him in the National Firearms
Registration and Transfer Record. *See* 26 U.S.C. § 5861(d);
*see also id.* § 5845(a)(8), (f)(1)(B). Specifically, he argues
that (1) the indictment underlying his convictions was
multiplicitous, and thus violated the Fifth Amendment's
guarantee against double jeopardy; and (2) the govern-
ment failed to prove at trial that he possessed the de-
structive devices. We affirm.

## I. HISTORY

In August 2005, a federal grand jury indicted Moses with one count of violating 18 U.S.C. § 922(g)(1) for possessing firearms after having been previously convicted of a felony, and five counts of violating 26 U.S.C. § 5861(d). Section 5861(d), a provision in the Internal Revenue Code, makes it illegal for an individual "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record," and thus evade the excise tax that would have been due had the firearm been properly registered. *See* 26 U.S.C. § 5861(d); *see also id.* §§ 5811, 5841; *United States v. Lim*, 444 F.3d 910, 912 (7th Cir. 2006). The "firearms" to which the excise tax applies are not the handguns or rifles familiar to most people; in this statutory context, "firearms" means sawed-off shotguns, modified rifles, machine guns, silencers, and, as pertinent here, "destructive devices," meaning "any explosive . . . grenade." *See* 26 U.S.C. §§ 5811, 5841, 5845(a)-(e), (f)(1)(B). Moses was charged with knowingly possessing five such destructive devices, which, the indictment stated, are "more fully described as . . . gold top 40mm cartridge[s] marked 'HEDP.'"

Moses moved to dismiss the indictment on the ground that the multiple counts of possessing non-registered destructive devices violated his Fifth Amendment right against double jeopardy by allowing for more than one prosecution of the simultaneous possession of the devices. When the district court denied that motion, Moses exercised his right to a jury trial. After the parties stipulated that Moses had been previously convicted of a felony, the government presented its case against him. That evidence, which we recount in a light most favorable to the government, *see United States v. Morris*, 498 F.3d 634, 637 (7th Cir. 2007), was as follows:

In April 2005, several police officers in Fond du Lac, Wisconsin, received an anonymous tip that Moses's

girlfriend, Christine Stoffel, was dealing crack cocaine and other drugs. The officers investigated the tip by visiting Stoffel at home. At that time, Stoffel resided with Moses in the duplex that he owned; they lived in the duplex's downstairs apartment while Moses rented the apartment upstairs to a mutual acquaintance. The officers met with Stoffel on the duplex's front porch when Moses was away, and she eventually consented to a search of her belongings; incident to that search, the officers recovered marijuana and nearly 50 pills of Vicodin from Stoffel's purse. Based on that discovery, the officers obtained a warrant to search the entire apartment. Moses had returned home by the time the officers executed the warrant, and was present for the ensuing search.

During the search of Moses's residence, the officers noted that the apartment appeared "cluttered," as if someone was moving in or out; among the clutter the officers found a letter addressed to reach Moses at the apartment. The officers also recovered a fanny-pack, in which they later discovered a picture of Moses dressed in military fatigues, standing next to very large guns, and on top of what appeared to be a military vehicle of some sort. The officers then searched Moses's bedroom, where they found three rifles, three handguns, and approximately 2,100 rounds of ammunition of various kind and caliber; some of the rounds were stored in a military-style, metal ammunition box. After they located the weapons, the officers ran a criminal-background check on Moses, confirmed that he had a felony conviction, and arrested him. The officers then continued the search by moving to the duplex's basement, which was accessed by a stairway shared by both apartments. There they located a closed, metal ammunition box similar to the one recovered from the bedroom, except that this box contained six blue-tipped and five gold-tipped 40mm rounds. Because the officers did not recognize the rounds, they carefully placed them

on the duplex's front porch and called the bomb squad to remove them.

Once the 40mm rounds were safely removed from Moses's duplex, the police officers contacted federal law enforcement agents who could help identify the rounds. The federal agents explained that the gold-tipped rounds are actually military-grade, 40mm high-explosive, dual-purpose (HEDP) grenades, and the blue-tipped rounds are nonexplosive practice rounds. The grenades and practice rounds are available to the military only, which uses them as ammunition for its Mark-19 automatic grenade launcher. Because the grenades contain "anti-personnel" shrapnel and can "penetrate armored vehicles," they constitute "destructive devices," meaning that any individual possessing them must, under federal law, register in the National Firearms Registration and Transfer Record. *See* 26 U.S.C. §§ 5841, 5845(a)(8), (f)(a)(B), 5861(d). Moses, as it turned out, was not listed in the registry.

Further investigative work by the federal law enforcement agents revealed that Moses served in the military, where he had substantial experience with HEDP grenades and the other types of ammunition recovered from his apartment. Specifically, from 1990 to 1994, Moses served in the Marine Corps as an Amphibian Assault Vehicle Crewman in the 2nd Amphibian Assault Battalion, 2nd Marine Division, in Camp Lejuene, North Carolina. In that position he was trained to operate the Marine Corps's amphibious assault vehicle's weapons system, which primarily utilized the Mark-19 and HEDP grenades. Accordingly, Moses had ready access to the grenades for training purposes; in fact, the agents found out, the photograph recovered from Moses's apartment depicted him standing next to a Mark-19 mounted on top of an amphibious assault vehicle. Furthermore, while inventorying the ammunition recovered from Moses's bedroom,

the agents discovered numerous .223 caliber tracer rounds. The tracer rounds are manufactured to be fired from the Marine Corps's M249 automatic rifle, which Moses was trained to use as well. While serving in the Marine Corps, Moses had regular access to the tracer rounds for training purposes, much like he had with the grenades; the tracer rounds also are available only to the military.

The government rested its case after it presented the evidence regarding Moses's arrest, his military experience, and the HEDP grenades. Moses elected to present no evidence or testimony in his defense. But at the close of evidence, he moved for a judgment of acquittal on the basis that the government failed to prove that he possessed the weapons, including the grenades. *See* Fed. R. Crim. P. 29(a). Specifically, Moses asserted that the government merely had proved that he "owned a house where these things were found, and had some connection 11 years prior to items similar to the destructive devices that were found in the basement." The court reserved a decision on the motion and submitted the case to the jury, which, in turn, found Moses guilty on all six counts. In response, Moses renewed his motion for a judgment of acquittal, *see* Fed. R. Crim. P. 29(c), which the court denied on the basis that the government introduced sufficient evidence from which the jury could conclude that he knowingly possessed the grenades. The court then sentenced Moses to six concurrent terms of 84 months' imprisonment—one term for his felon-in-possession conviction under 18 U.S.C. § 922(g)(1), and five terms for his § 5861(d) convictions.

## II. ANALYSIS

On appeal, Moses challenges only his five § 5861(d) convictions for possessing the non-registered HEDP

grenades; he does not appeal his felon-in-possession conviction under 18 U.S.C. § 922(g)(1). In so doing, he renews his arguments that the indictment underlying his convictions was multiplicitous, and that the government failed to prove at trial that he possessed the grenades. We address those arguments in turn.

### A. *Moses's Multiplicity Challenge*

Moses argues that the government violated his Fifth Amendment right against double jeopardy by indicting him on five counts for what he asserts was a single offense: the simultaneous possession of the five HEDP grenades. Moses accordingly contends that the district court erred by allowing the government to prosecute him separately for "each and every" grenade he possessed, when he should have been prosecuted only once for the sole act of possessing the grenades. Our review is *de novo. United States v. Starks*, 472 F.3d 466, 468 (7th Cir. 2006).

Although the government may prosecute an individual for every separate criminal act he commits, *see* Fed. R. Crim. P. 8(a); *United States v. Berardi*, 675 F.2d 894, 898 (7th Cir. 1982), the Double Jeopardy Clause prohibits the government from prosecuting an individual more than once for the same criminal act, *see Schiro v. Farley*, 510 U.S. 222, 229 (1994); *Starks*, 472 F.3d at 469. The pertinent issue here is not whether the government prosecuted Moses more than once; the five-count indictment is clear on that score. Instead, the dispositve question is whether multiple and simultaneous violations of § 5861(d) constitute one criminal act or several separate acts. Specifically, we must determine whether the government could prosecute Moses (a) only for the one alleged act of possessing non-registered destructive devices, or (b) separately for each of the five non-registered destructive devices alleged to have been in his possession. In

answering that question we must look to § 5861(d) to discern the allowable "unit of prosecution" under that statute—that is, "the minimum amount of activity for which criminal liability attaches." *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995); *see also United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir. 2001).

This is not the first time that we have examined the intended unit of prosecution for crimes involving firearms. We have held on numerous occasions that the Double Jeopardy Clause prohibits the government from separately charging possession of multiple firearms under 18 U.S.C. § 922 when the possession of the firearms in question was "simultaneous and undifferentiated." *See, e.g.*, *United States v. Parker*, 508 F.3d 434, 439-41 (7th Cir. 2007); *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002); *Buchmeier*, 255 F.3d at 423; *United States v. McKinney*, 919 F.2d 405, 418 (7th Cir. 1990); *United States v. Oliver*, 683 F.2d 224, 233 (7th Cir. 1982); *McFarland v. Pickett*, 469 F.2d 1277, 1279 (7th Cir. 1972). In such circumstances, we concluded, the unit of prosecution was the act of possession, and not the number of firearms possessed. But that holding was not based on a determination that the act of possession was the clearly intended unit of prosecution; in fact, the intended unit of prosecution was not clear at all. Indeed, because Congress did not clearly articulate the intended unit of prosecution for simultaneous § 922 violations, we declined to turn "'a single transaction into multiple offenses.'" *Buchmeier*, 255 F.3d at 421 (quoting *Bell v. United States*, 349 U.S. 81, 84 (1955)); *see also Conley*, 291 F.3d at 470; *McFarland*, 469 F.2d at 1278-79.

Nevertheless, the issue of the intended unit of prosecution for violations of § 5861(d) is one of first impression for this court, though other circuit courts of appeals have been addressing the issue for quite some time. As

Moses admits in his brief, the courts that have addressed the issue unanimously agree that the unit of prosecution for simultaneous and multiple violations of § 5861(d) is the number of the non-registered firearms possessed. *See, e.g.*, *Jackson v. United States*, 926 F.2d 763, 764 (8th Cir. 1991) (per curiam); *United States v. Nichols*, 731 F.2d 545, 547 (8th Cir. 1984); *United States v. Alverson*, 666 F.2d 341, 347 (9th Cir. 1982); *United States v. Tarrant*, 460 F.2d 701, 704 (5th Cir. 1972); *Sanders v. United States*, 441 F.2d 412, 414-15 (10th Cir. 1971). Moses further concedes that these decisions support the conclusion that the indictment underlying his convictions was not multiplicitous. Yet, for reasons unexplained, he does not assert that the decisions are incorrect or inapplicable.

Moses cannot prevail without explaining why we should ignore the conclusions of the many circuit courts of appeals, particularly when the Fifth and Ninth Circuits have articulated compelling explanations as to why an individual may be prosecuted under § 5861(d) for each non-registered firearm he is alleged to have possessed. *See Alverson*, 666 F.2d at 347; *Tarrant*, 460 F.2d at 704. As those courts explained, although a violation of § 5861(d) necessarily involves the possession of a firearm, the crime is more aptly characterized as a form of tax evasion. *See Alverson*, 666 F.2d at 347; *Tarrant*, 460 F.2d at 704; *see also Lim*, 444 F.3d at 912. Section 5861(d) makes it unlawful for any person "'to receive or possess a firearm,'" as defined by 26 U.S.C. § 5845, "'which is not registered to him in the National Firearms Registration and Transfer Record.'" *Tarrant*, 460 F.2d at 704 (quoting 26 U.S.C. § 5861(d)); *see also Alverson*, 666 F.2d at 347. The National Firearms Registration and Transfer Record, in turn, is a central registry of all firearms in the United States created to help enforce the excise tax on firearms transfers. *See Alverson*, 666 F.2d at 347; *Tarrant*, 460 F.2d at

704; *see also* 26 U.S.C. §§ 5811, 5841, 5845; *Lim*, 444 F.3d at 912. Because that tax is evaded each time a firearm is not registered, each non-registered firearm deprives the federal government of the proper tax due on that weapon; simply put, each non-registered firearm represents a separate instance of tax evasion that may be prosecuted separately. *See Alverson*, 666 F.2d at 347; *Tarrant*, 460 F.2d at 704.

We agree with the several courts of appeals that there is one unit of prosecution under § 5861(d) for each non-registered firearm possessed, and that an individual accordingly may be prosecuted for each non-registered firearm he is alleged to have possessed. We further adopt the Fifth and Ninth Circuits' reasoning that the purpose of the statutory scheme from which § 5861(d) derives dictates that each non-registered firearm (and thus each instance of tax evasion) corresponds to one unit of prosecution. *Accord Lim*, 444 F.3d at 912. Indeed, the discernable need to prosecute each violation of the excise tax on firearms transfers explains why multiple and simultaneous violations of § 5861(d) may be prosecuted separately, while "simultaneous and undifferentiated" violations of 18 U.S.C. § 922 may not. *Compare Tarrant*, 460 F.2d at 704 ("Since Congress was interested in collecting the tax on each weapon, clearly separate offenses for each firearm were intended to provide incentive for sellers and buyers to declare their weapons and pay the tax."), *with Conley*, 291 F.3d at 464 ("Congress intended that persons convicted of violating 18 U.S.C. § 922(g)(1) should be punished only for possessing weapons in separate courses of conduct."). Moses's multiplicity challenge accordingly fails.

## B.  Moses's Sufficiency-of-the-Evidence Argument

Moses also argues that the district court erred by failing to grant his motion for a judgment of acquittal be-

cause the government did not introduce sufficient evidence that he had "actual possession" of the HEDP grenades. But in so arguing, Moses makes the puzzling concession that "it is clear that the Government presented a case of 'constructive' possession." Moses continues, however, the government failed to show that he "had any control over the [grenades] with the exception that his name was on the deed [of his duplex]." Our review, once again, is *de novo. United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002).

A district court should grant a motion for a judgment of acquittal only when there is insufficient evidence to sustain a conviction. *See* Fed. R. Crim. P. 29(a), (c); *United States v. Jones*, 222 F.3d 349, 351-52 (7th Cir. 2000). On appeal, Moses bears the heavy burden of demonstrating that the evidence insufficiently established that he possessed the HEDP grenades; in fact, that burden is best described as "nearly insurmountable." *See United States v. Jackson*, 177 F.3d 628, 630 (7th Cir. 1999). Viewing the evidence presented at trial in the light most favorable to the government, *Morris*, 498 F.3d at 637, we will overturn Moses's guilty verdict only if "the record contains no evidence, regardless of how it is weighed," from which the jury could have concluded beyond a reasonable doubt that he is guilty, *United States v. Gougis*, 432 F.3d 735, 743-44 (7th Cir. 2005) (internal quotation marks and citation omitted).

At the outset, we note that Moses's concession that the government established that he constructively possessed the HEDP grenades dooms his argument. At trial, the government shouldered the burden of proving that Moses knowingly possessed the grenades. *See* 26 U.S.C. § 5861(d); *United States v. Hite*, 364 F.3d 874, 881 (7th Cir. 2004), *vacated on other grounds*, 543 U.S. 1103, 116 (2005) (vacating judgment and remanding for further consider-

ation in light of *United States v. Booker*, 543 U.S. 220 (2005)). And contrary to what Moses asserts, the government did not need to show that he "actually" possessed the grenades; constructive possession was enough, *see Hite*, 364 F.3d at 881; *Alverson*, 666 F.2d at 345, which the government could prove by showing that Moses had "the power and intent to exercise control" over the grenades "either directly or through others," *United States v. Stevens*, 453 F.3d 963, 965-66 (7th Cir. 2006); *see also United States v. Morris*, 349 F.3d 1009, 1014 (7th Cir. 2004). Simply put, there is no legal difference here between actual and constructive possession. *See Stevens*, 453 F.3d at 965 ("Possession may be either actual or constructive, exclusive or joint."); *Morris*, 349 F.3d at 1014 ("As we have stated many times, possession 'may be either actual or constructive and it need not be exclusive but may be joint . . . .'" (quoting *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990))). Thus, Moses's challenge ended as soon as his concession was made.

In any event, at trial the government introduced abundant evidence showing that Moses knowingly possessed the HEDP grenades. Specifically, the government established that Moses had the power and intent to control the grenades based on the uncontradicted evidence that he (1) owned the duplex where the grenades were recovered; (2) lived in the bottom apartment of the duplex, as shown by the mail addressed to him at that apartment; (3) had direct access from the apartment to the basement where the grenades were found; and (4) controlled who had access to the basement as landlord of the duplex. *See United States v. Harris*, 325 F.3d 865, 869-71 (7th Cir. 2003) (holding evidence sufficient to find defendant guilty of possessing drugs when drugs were found in defendant's home, even though defendant claimed that she was not aware of drugs); *United States v. Thomas*, 321 F.3d 627, 636 (7th Cir. 2003) ("[W]here we have

found constructive possession of firearms when they are found in close proximity to the defendants, the weapons were found in areas over which the defendant exercised control, such as a bedroom, garage, or workplace." (internal citations omitted)); *United States v. Richardson*, 208 F.3d 626, 632 (7th Cir. 2000) (finding constructive possession when defendant admitted being landlord of residence, medicine bottles with defendant's name were found at residence, and defendant received mail at residence).

Moreover, Moses's military background supports the conclusion that he possessed the HEDP grenades. The grenades are available only to members of the military and, based on their size and destructive capability, obviously exist solely for military use. (Appended to this Opinion are photographs of both the fist-sized HEDP grenades recovered from Moses's basement and the Mark-19 automatic grenade launcher.) And Moses, as an Amphibian Assault Vehicle Crewman, was trained specifically to fire the grenades with the Mark-19 and had ready access to the grenades; indeed, Moses was pictured standing on top of an amphibious assault vehicle next to a Mark-19. Even more, the grenades were not the only military-grade weaponry recovered from Moses's home; the search of the apartment also turned up tracer rounds that are available only to the military. Because Moses presented no evidence showing that anyone else would have had a similar opportunity to encounter and possess the extremely exclusive grenades, the jury could have easily inferred that Moses had a penchant for pilfering ammunition that he came across during his service as a Marine—indeed, Moses admits in his brief that the grenades could be seen as "almost a souvenir." We thus cannot fault the district court for denying Moses's motion for a judgment of acquittal. *See O'Hara*, 301 F.3d at 569; *Gougis*, 432 F.3d at 743-44.

## III. Conclusion

We AFFIRM Moses's five convictions under 26 U.S.C. § 5861(d).

**APPENDIX**
**HEDP Grenades Recovered from Moses's Basement**



**Mark-19 Automatic Grenade Launcher**
**(Mounted on a tripod for use in the field)**



No. 07-1123                                                    15

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*